# ***REDACTED (PUBLIC) VERSION***

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| J. DOE,<br><br>        Plaintiff,<br><br>      v.<br><br>UNITED STATES FOOD AND DRUG<br>ADMINISTRATION and UNITED<br>STATES DEPARTMENT OF HEALTH<br>AND HUMAN SERVICES,<br><br>        Defendants. | Case No. 1:23-cv-01389 (ABJ) |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' <u>MOTION TO DISMISS</u>

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................... 1

STATEMENT OF THE CASE.................................................................................... 2

    A.    Background ......................................................................................... 2

    B.    Administrative & Procedural History ................................................. 6

STANDARD OF REVIEW ....................................................................................... 10

    A.    Motion to Dismiss............................................................................. 10

    B.    The APA and Reverse-FOIA Actions................................................ 10

ARGUMENT ............................................................................................................ 11

I.      THE COMPLAINT STATES A COGNIZABLE REVERSE-FOIA CLAIM
       UNDER THE ADMINISTRATIVE PROCEDURE ACT ............................ 11

    A.    Plaintiff's Reverse-FOIA Claim Was Properly Brought Under the APA. .......... 11

    B.    The Complaint Alleges Violations of the APA Predicated on Defendants'
         Refusal to Redact Personally-Identifying Information from a Form 483
         that Exceeded the Scope of the Agency's Authority. ......................... 15

         1.    Disclosure of Plaintiff's Identity in the Form 483 Is Contrary to
              FDA Policy, Practice, and Precedent........................................ 15

         2.    As Issued, the Form 483 Exceeds the Scope of FDA's Statutory
              Authority Under 21 U.S.C. § 374. ........................................... 18

    C.    Plaintiff Sufficiently Alleges that Plaintiff's Identity Falls Within FOIA
         Exemptions 6 and 7(C). ..................................................................... 19

         1.    Disclosure of a Private Citizen's Identity Does Not Further the
              Purpose of FOIA. ..................................................................... 19

         2.    Plaintiff's Job Title Readily Identifies Plaintiff...................................... 20

         3.    Disclosure of Plaintiff's Identity Is an Unwarranted Invasion of
              Plaintiff's Personal Privacy...................................................... 20

    D.    Observations in Forms 483 Can and Have Led to Professional Harm. .............. 24

II.    IN THE ALTERNATIVE, PLAINTIFF REQUESTS LEAVE TO AMEND OR
      THE PRODUCTION OF THE ADMINISTRATIVE RECORD................... 26

CONCLUSION.......................................................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AAR Airlift Grp., Inc. v. U.S. Transp. Command*,
  161 F. Supp. 3d 37 (D.D.C. 2015) .............................................................................11

*\*Am. Farm Bureau Fed'n v. U.S. Env't Prot. Agency*,
  836 F.3d 963 (8th Cir. 2016) ...........................................................11, 13, 19, 23

*Appalachian Power Co. v. Env't Prot. Agency*,
  208 F.3d 1015 (D.C. Cir. 2000) ...........................................................................15

*Arieff v. Dep't of Navy*,
  712 F.2d 1462 (D.C. Cir. 1983) .......................................................................25, 26

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..............................................................................................10

*Baez v. U.S. Dep't of Just.*,
  647 F.2d 1328 (D.C. Cir. 1980) .............................................................................22

*Banneker Ventures, LLC v. Graham*,
  798 F.3d 1119 (D.C. Cir. 2015) ...............................................................................7

*Bartko v. U.S. Dep't of Just.*,
  898 F.3d 51 (D.C. Cir. 2018) ...........................................................................25, 26

*\*Bast v. U.S. Dep't of Just.*,
  665 F.2d 1251 (D.C. Cir. 1981) .............................................................................22

*Beaty, et al. v. Food & Drug Admin. et al.*,
  No. 11 Civ. 289, 2011 WL 1491405 (D.D.C. Apr. 20, 2011) ................................16

*Beck v. U.S. Dep't of Just.*,
  997 F.2d 1489 (D.C. Cir. 1993) .............................................................................21

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).................................................................................................10

*\*Bloomgarden v. U.S. Dep't of Just.*,
  874 F.3d 757 (D.C. Cir. 2017) ......................................................................... *passim*

*Bowen v. Am. Hosp. Ass'n*,
  476 U.S. 610 (1986)................................................................................................11

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Brancheau v. Sec'y of Lab.*,
No. 6:11 Civ. 1416, 2012 WL 140239 (M.D. Fla. Jan. 18, 2012)...........................................14

*Buffington v. McDonough*,
143 S. Ct. 14 (2022)........................................................................................................10

*Cal. Cattlemen's Assoc. v. U.S. Fish & Wildlife Serv.*,
315 F. Supp. 3d 282 (D.D.C. 2018).................................................................................10

*Campaign for Fam. Farms v. Veneman*,
No. 99 Civ. 1165, 2001 WL 1631459 (D. Minn. July 19, 2001)...........................................20

*Canadian Com. Corp. v. Dep't of Air Force*,
514 F.3d 37 (D.C. Cir. 2008)...........................................................................................12

*In re Cantrell Drug Co.*,
Case No. 6279 (Ca. Bd. of Pharmacy, Jan. 18, 2018) ...........................................................24

*\*Carter v. U.S. Dep't of Com.*,
830 F.2d 388 (D.C. Cir. 1987)....................................................................................14, 23

*\*Chrysler Corp. v. Brown*,
441 U.S. 281 (1979)....................................................................................................12, 13

*Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*,
436 F. Supp. 3d 354 (D.D.C. 2020).................................................................................10

*Comcast Corp. v. Fed. Commc'ns Comm'n*,
526 F.3d 763 (D.C. Cir. 2008)...........................................................................................11

*Cook v. Food & Drug Admin.*,
733 F.3d 1 (D.C. Cir. 2013)...........................................................................................16

*Ctr. for Biological Diversity v. Trump*,
453 F. Supp. 3d 11 (D.D.C. 2020).................................................................................10

*Dep't of the Air Force v. Rose*,
425 U.S. 352 (1976)........................................................................................................23

*Dept. of Homeland Sec. v. Regents of the Univ. of Cal.*,
140 S. Ct. 1891 (2020)....................................................................................................10

*Detroit Int'l Bridge Co. v. Fed. Highway Admin.*,
666 F. Supp. 2d 740 (E.D. Mich. 2009).........................................................................14

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*In re Establishment Inspection of: Wedgewood Vill. Pharmacy, Inc.*,
   270 F. Supp. 2d 525 (D.N.J. 2003) ...................................................................................3

*Firestone v. Firestone*,
   76 F.3d 1205 (D.C. Cir. 1996) ........................................................................................26

*Gen. Elec. Co. v. Dep't of the Air Force*,
   648 F. Supp. 2d 95 (D.D.C. 2009) ...................................................................................11

*Goldstein v. Treasury Inspector Gen. for Tax Admin.*,
   No. 14 Civ. 02189, 2018 WL 3424259 (D.D.C. June 25, 2018) ....................................22

*Havemann v. Colvin*,
   537 F. App'x 142 (4th Cir. 2013) ....................................................................................20

*INS v. Yang*,
   519 U.S. 26 (1996) ...........................................................................................................17

*Jud. Watch, Inc. v. Food & Drug Admin.*,
   449 F.3d 141 (D.C. Cir. 2006) ........................................................................................21

*Jud. Watch, Inc. v. U.S. Dep't of Com.*,
   337 F. Supp. 2d 146 (D.D.C. 2004) .................................................................................21

*Kowal v. MCI Commc'ns Corp.*,
   16 F.3d 1271 (D.C. Cir. 1994) ........................................................................................10

*Lesar v. U.S. Dep't of Just.*,
   636 F.2d 472 (D.C. Cir. 1980) ...................................................................................21, 22

*Ligorner v. Reno*,
   2 F. Supp. 2d 400 (S.D.N.Y. 1998) .................................................................................20

*Malloy v. U.S. Dep't of Just.*,
   457 F. Supp. 543 (D.D.C. 1978) ......................................................................................23

*Marsh v. Ore. Nat. Res. Council*,
   490 U.S. 360 (1989) .........................................................................................................11

*\*McCutchen v. U.S. Dep't of Health & Hum. Servs.*,
   30 F.3d 183 (D.C. Cir. 1994) ................................................................................2, 22, 24

*Mead Data Cent. Inc., v. U.S. Dep't of Air Force*,
   566 F.2d 242 (D.C. Cir. 1977) ........................................................................................18

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*MediNatura, Inc. v. Food & Drug Admin.*,
   496 F. Supp. 3d 416 (D.D.C. 2020) ...............................................................................15, 17

*Morton v. Ruiz*,
   415 U.S. 199 (1974).........................................................................................................17

*Nat. Res. Def. Council, Inc. et al. v. U.S. Food & Drug Admin. et al.*,
   No. 11 Civ. 3562, 2012 WL 13048814 (S.D.N.Y. Mar. 21, 2012) ........................................16

*Nat'l Bus. Aviation Ass'n, Inc. v. Fed. Aviation Admin.*,
   686 F. Supp. 2d 80 (D.D.C. 2010) ...................................................................................11

*Nation Mag., Wash. Bureau v. U.S. Customs Serv.*,
   71 F.3d 885 (D.C. Cir. 1995)..........................................................................................23

*Regenerative Scis., Inc. v. U.S. Food & Drug Admin. et al.*,
   No. 09 Civ. 411, 2009 WL 2956105 (D. Colo. Apr. 29, 2009)............................................16

*Richardson v. United States*,
   193 F.3d 545 (D.C. Cir. 1999).........................................................................................26

*Rushford v. Civiletti*,
   485 F. Supp. 477 (D.D.C. 1980).......................................................................................24

*Senate of the Commonwealth of P.R. on Behalf of Judiciary Comm. v. U.S. Dep't of Just.*,
   823 F.2d 574 (D.C. Cir. 1987).........................................................................................21

*Tripp v. Dep't of Def.*,
   193 F. Supp. 2d 229 (D.D.C. 2002)..................................................................................14

*U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*,
   489 U.S. 749 (1989)..............................................................................................19, 20, 21

*United States v. Scrushy*,
   366 F. Supp. 2d 1134 (N.D. Ala. 2005)..............................................................................3

**United States v. Stevens*,
   No. 8:10 Cr. 694 (D. Md. Nov. 8, 2010)................................................................18, 24, 25

*United States v. Stokes*,
   292 F.3d 964 (9th Cir. 2002) .............................................................................................3

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*United Techs. Corp. v. U.S. Dep't of Def.*,
   601 F.3d 557 (D.C. Cir. 2010)............................................................................12

*Vanda Pharms., Inc. v. Food & Drug Admin.*,
   436 F. Supp. 3d 256 (D.D.C. 2020)..............................................................17, 18

*Walsh v. Dep't of Navy*,
   No. 91 Civ. 7410, 1992 WL 67845 (N.D. Ill. Mar. 23, 1992)................................20

*Weisberg v. U.S. Dep't of Just.*,
   745 F.2d 1476 (D.C. Cir. 1984)............................................................................21

*Whitlock v. U.S. Dep't of Homeland Sec.*,
   No. 21 Civ. 807, 2022 WL 424983 (D.D.C. Feb. 11, 2022)................................12

**Statutes and Regulations**

5 U.S.C.
   § 552........................................................................................................5, 21
   §§ 701–06...............................................................................................9, 12
   § 706...........................................................................................................11

21 U.S.C.
   § 335..........................................................................................................3, 19
   § 372..........................................................................................................3, 19
   *§ 374...................................................................................................*passim*

21 C.F.R.
   § 20.20...........................................................................................................5
   *§ 20.47...........................................................................................................9
   *§ 20.48..................................................................................................5, 9, 14, 15
   § 20.64...........................................................................................................4
   § 20.67...........................................................................................................5

**Rules**

Federal Rule of Civil Procedure 12 ....................................................................1, 9, 10
Federal Rule of Civil Procedure 15 ....................................................................26, 27

U.S. District Court for the District of Columbia Local Civil Rule 7(n) ....................9, 26

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

**Other Authorities**

Department of Justice Guide to the Freedom of Information Act: Reverse FOIA,
U.S. Dep't of Just., https://www.justice.gov/media/1027876/dl?inline ................................12

FDA Enforcement Manual (Jan. 2023 Supp.) ............................................................................15

*Investigations Operations Manual, U.S. Food & Drug Admin. (2022),
https://www.fda.gov/media/113432/download ............................................. *passim*

Plaintiff J. Doe respectfully submits this memorandum of law in opposition to Defendants United States Food and Drug Administration ("FDA") and United States Department of Health and Human Services' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

Plaintiff is a licensed, practicing attorney who works for an FDA-regulated company (the "Company"). After inspecting one of the Company's facilities, FDA issued an FDA Form 483 (the "Form 483") which is the subject of this action. Under the relevant subsection of the Federal Food, Drug, and Cosmetic Act (the "FDCA"), a Form 483 is issued to "give to the owner, operator, or agent in charge a report in writing setting forth any conditions or practices *observed by* [FDA]" that allegedly are not in accordance with the FDCA. 21 U.S.C. § 374(b)(1) (emphasis added). In accordance with FDA's statutory authority, observations on a Form 483 are limited to those that "indicate that any food, drug, device, tobacco product, or cosmetic in such establishment (A) consists in whole or in part of any filthy, putrid, or decomposed substance, or (B) has been prepared, packed, or held under *insanitary conditions* whereby it may have become contaminated with filth, or whereby it may have been rendered injurious to health." *Id.* (emphasis added).

The Form 483 issued to the Company exceeded the scope of this authority. Rather than focusing on "insanitary conditions" and "observations," it includes credibility judgments by the FDA investigator about statements made by various individuals at the Company, including individuals to whom the FDA investigator never spoke. As relevant to this action, this includes Plaintiff. While Defendants aver that the investigator's "on-the-spot observations" could "hardly constitute[] evidence of untruthfulness that would, or could reasonably be expected to, plausibly lead to a state bar disciplinary proceeding against Plaintiff or harm Plaintiff's future job prospects," Defendants do not cite any authority for this conclusory statement, in stark contrast to the cases where direct professional harm has flowed from Forms 483. Defs. Mem. 15, ECF No. 15-1. It is

1

precisely this articulated and recognized harm—the risk that Plaintiff would be judged as "untruthful" based on the FDA investigator's improper "observations"—that drives this lawsuit.[1]

As set forth in the Complaint, the Company first, and then Plaintiff second, responded to the inappropriate Form 483 observations by requesting simply that Defendants redact Plaintiff's title, which Defendants admitted singularly identifies Plaintiff. While Defendants agreed to redact the name of the Company's outside counsel that is also referenced in the Form 483 observations, they were unwilling to follow suit for Plaintiff. FDA's actions here are contrary to policy, including FDA's Investigations Operations Manual ("IOM"), and precedent. FDA's actions are also inconsistent with caselaw in this Circuit that upheld redactions in analogous circumstances. For these reasons, Plaintiff has properly alleged a cause of action under the Administrative Procedure Act ("APA") challenging Defendants' improperly issued Form 483 observations, and nothing in Defendants' motion compels dismissal of Plaintiff's case as a matter of law at this early stage, particularly because the administrative record has not yet been produced. *See* August 3, 2023 Minute Order.

## STATEMENT OF THE CASE

### A.    Background

The FDCA provides FDA the authority to conduct inspections and authorizes FDA officers or employees to enter, at ***reasonable*** times, and inspect, at ***reasonable*** times and within ***reasonable*** limits and ***in a reasonable manner***, facilities subject to regulation under the FDCA. *See* 21 U.S.C. § 374(a) (emphasis added). Congress, and courts interpreting this provision, have underscored the

---

[1]  *See, e.g.*, *Bloomgarden v. U.S. Dep't of Just.*, 874 F.3d 757, 760–61 (D.C. Cir. 2017) (withholding from disclosure a document "contain[ing] mere allegations" about a "practicing lawyer who would undoubtedly be quite embarrassed by disclosure"); *McCutchen v. U.S. Dep't of Health & Hum. Servs.*, 30 F.3d 183, 187 (D.C. Cir. 1994) (withholding identities of scientists named in connection with "allegations of misconduct" which "could reduce [their] chances of securing grants or obtaining tenure").

need for FDA to act reasonably when conducting inspections authorized by this provision. *Cf. In re Establishment Inspection of: Wedgewood Vill. Pharmacy, Inc.*, 270 F. Supp. 2d 525, 540 (D.N.J. 2003), *aff'd sub nom. Wedgewood Vill. Pharmacy, Inc. v. United States*, 421 F.3d 263 (3d Cir. 2005) (noting that there are "limits on the inspection permitted" under Section 374 because agents may enter only "at reasonable times" and conduct the inspection "within reasonable limits and in a reasonable manner"). During an inspection, FDA investigators may observe conditions they deem to be objectionable. At the conclusion of an inspection, a Form 483 is presented and discussed with the site senior management. *See* 21 U.S.C. § 374(b)(1) (Form 483 issued to "set[] forth any conditions or practices observed" indicating that a regulated product consists "of any filthy, putrid, or decomposed substance" or "has been prepared, packed, or held under insanitary conditions").

An inspection under 21 U.S.C. § 374 is not an invitation for FDA to use its civil authority to conduct a criminal investigation. To be sure, as a public health agency, it is important for FDA to be able to investigate if it believes criminal conduct has taken place. But Congress has provided FDA with separate authority to conduct such investigations, *see* 21 U.S.C. § 372, and established separate due process requirements when such investigations are conducted, *see* 21 U.S.C. § 335. These authorities are in addition to the constitutionally mandated requirement to obtain a warrant. *Cf. United States v. Stokes*, 292 F.3d 964, 967 (9th Cir. 2002) (a search "violates the Fourth Amendment" when it operates as "a subterfuge for a criminal investigation" to evade the Fourth Amendment's warrant and probable cause requirements). There is no dispute that the civil inspection at issue here was conducted under 21 U.S.C. § 374, and not 21 U.S.C. § 372. Courts routinely rebuke the government for using the civil process to further criminal investigations. *See, e.g.*, *United States v. Scrushy*, 366 F. Supp. 2d 1134 (N.D. Ala. 2005) (suppressing defendant's

3

deposition testimony given in SEC civil investigation, holding it could not be used in the criminal case against defendant who was not made aware of DOJ's involvement in the SEC investigation nor of the likelihood of criminal prosecution).

As explained in the statute and the IOM, the purpose of a Form 483 is not punitive, but rather is "intended for use in notifying the inspected establishment's top management in writing of significant objectionable conditions, relating to products and/or processes, or other violations of the [FDCA] and related Acts . . . *which were observed during the inspection*."  IOM § 5.2.3, U.S. Food & Drug Admin. (2022), https://www.fda.gov/media/113432/download; *see also* 21 U.S.C. § 374(b)(1).  The FDCA and the IOM authorize FDA investigators to issue Forms 483 to report conditions *they observed*.  It is hard to imagine how credibility assessments about individuals to whom the FDA investigator never spoke fit this bill.

FDA's IOM is "the primary operational reference for FDA employees who perform field activities in support of the agency's public health mission."  IOM at Foreword 2022.  As explained within the IOM, "[i]t is preferred not to identify individuals or firms by name"—rather, if necessary, individuals or firms should be identified "by substituting *other non-specific identifying information*."  IOM § 5.2.3.1.4 (emphasis added).  Where a title is synonymous with a person's name, as Defendants admit is the case here, using such title is inconsistent with the IOM and precedent.  FDA could have, for example, used a more generic term to refer to Plaintiff rather than using Plaintiff's title.

FDA can decide to make Forms 483 available publicly, though the agency is not required to do so.  For Forms 483 that FDA decides to publish, it may redact certain information pursuant to FDA's regulations implementing the Freedom of Information Act ("FOIA"), 21 C.F.R. Part 20, and the exemptions to FOIA.  *See, e.g.*, 21 C.F.R. § 20.64(a)(3) ("Records or information compiled

for law enforcement purposes may be withheld from public disclosure . . . to the extent that disclosure . . . [c]ould reasonably be expected to constitute an unwarranted invasion of personal privacy.").   FOIA Exemption 6 allows for the protection of information about a person's "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Similarly, FOIA Exemption 7(C) protects against unwarranted invasions of privacy, allowing for withholding of "records or information compiled for law enforcement purposes" where they "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  FDA regulations permit "[r]ecords or information" to be "withheld from public disclosure if a statute specifically allows [FDA] to withhold them."  21 C.F.R. § 20.67.

Before filing this lawsuit, Plaintiff urged FDA to follow these regulations and precedent from this Circuit interpreting FOIA to "make the fullest possible disclosure of records to the public, ***consistent with the rights of individuals to privacy***."  21 C.F.R. § 20.20(a) (emphasis added). Cognizant of FOIA and the need to balance public interest in disclosure with personal privacy interests, neither the Company nor Plaintiff requested that FDA redact or withhold the entire Form 483 or even the entirety of the two observations that were an overreach of FDA's statutory authority under 21 U.S.C. § 374.  Rather, consistent with FOIA's implementing regulations, Plaintiff sought in its communications with FDA, and again seeks in this lawsuit, only the redaction of Plaintiff's title, which singularly identifies Plaintiff.

Without citing to any precedent or specific policy, FDA summarily denied this request. Moreover, in its correspondence with Plaintiff, Defendants explained that they intended to publish the Form 483 on May 17, 2023, necessitating this lawsuit to maintain the status quo while the Court evaluates Plaintiff's claim.  *See* 21 C.F.R. § 20.48 (noting that where FDA rejects a person's

request to redact all or part of the records that will be made available for public disclosure, "the decision constitutes final agency action" subject to judicial review and the affected person has five days "within which to institute suit in a United States District Court to enjoin release of the records involved").

**B.      Administrative & Procedural History**

In the spring of 2022, FDA inspected one of the Company's facilities.  Compl. ¶ 20, ECF No. 1.  Plaintiff was not the "most responsible person" at the facility, and did not interact with FDA during the inspection.  *Id.* ¶ 21.  FDA investigators never spoke to Plaintiff during the inspection.  *Id.* ¶ 23.

At the conclusion of the inspection, FDA issued a Form 483 to the site lead for the Company, not Plaintiff.  *Id.* ¶ 22.  Observation 1 of the Form 483 asserts that ███████████████

████████████████████████████████████████████████████

Declaration of Sonia W. Nath ("Nath Decl."), Ex. B, at 11.  The observation then states, ██████

████████████████████████████████████████████████████

███████████████████████  *Id.*  Although the observation claimed to ████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████  *Id.*

Observation 2 of the Form 483 asserts ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████  *Id.* at 12.

On June 10, 2022, the Company responded to the Form 483, in part highlighting factual inaccuracies in these two specific Form 483 "observations" containing references to Plaintiff and

external counsel and insinuating that the Company withheld information under the auspices of the attorney-client privilege.  Compl. ¶ 26.  After the inspection, the Company's external counsel requested that FDA either not publicly release the Form 483 or redact it to not disclose the identity of Plaintiff or external counsel.  *Id.* ¶ 25; *see also* Nath Decl., Ex. A.  FDA denied this request.  *See* Compl. ¶ 26.  On August 9, 2022, different external counsel for the Company emailed a second letter to FDA requesting that Plaintiff's identity and that of the Company's initial external counsel be treated as exempt from public disclosure under FOIA.  *Id.*; *see also* Nath Decl., Ex. B.[2]  On November 10, 2022, FDA agreed to redact the name of the Company's external counsel referenced in the Form 483 observations but declined to do the same for Plaintiff, referencing, without citation, a "general policy" that it "does not generally redact the names or titles of high-ranking officials."  Compl. ¶ 28; *see also* Nath Decl., Ex. C.  This letter did not reference any policies, including the IOM, nor any precedent.  *See id.*

On December 5, 2022, external counsel for the Company emailed another letter to the agency, seeking reconsideration of FDA's refusal to redact Plaintiff's identity "in light of the observations' factual inaccuracies and the negative effects of these factual inaccuracies" (the "December 5 Company Letter").  Compl. ¶ 29; *see also* Nath Decl., Ex. D.  Among other things, the December 5 Company Letter explained that Plaintiff's identity "should be redacted" because disclosure of Plaintiff's identity "would violate the individual's privacy interests in protecting their personal and professional reputation, as well as future employment opportunities."  Compl. ¶ 29; *see also* Nath Decl., Ex. D.  The Company urged that if the Form 483 were to be made public

---

[2]  On a motion to dismiss, the Court can "consider a document that a complaint specifically references without converting the motion into one for summary judgment."  *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015).  Accordingly, the Court can consider the documents affixed hereto as exhibits to the Declaration of Sonia W. Nath, all of which are specifically referenced in the Complaint.

without redacting Plaintiff's identity, "[it] is almost certain that the 483's factual inaccuracies would result in unjust negative reputational consequences for the individual."  Compl. ¶ 29; *see also* Nath Decl., Ex. D.

Through separately retained counsel, Plaintiff also responded to the FDA on December 5, 2022 ("December 5 Plaintiff Letter").  Compl. ¶¶ 30–31; *see also* Nath Decl., Ex. E.  Even though Plaintiff explained that references to Plaintiff's identity "go well beyond what is typically seen in these forms, including for these specific observations," and that counsel for Plaintiff "could find no other such FDA Form 483 that makes reference to a company's [Plaintiff's job title] in FDA's observations as was done in [the Company's] [], 2022 Form 483, where [Plaintiff's] title is used," Plaintiff did not ask the agency to withhold the Form 483 nor redact the entirety of the observations where Plaintiff is named.  Compl. ¶¶ 31, 33; *see also* Nath Decl., Ex. E.  Rather, Plaintiff sought only to redact Plaintiff's title, asserting the "significant personal privacy interest" that could impede Plaintiff's "ability to engage in [Plaintiff's] chosen profession."  Compl. ¶ 31; *see also* Nath Decl., Ex. E.  Plaintiff explained that "[t]his significant personal privacy interest substantially outweighs any minimal public interest in disclosure of [a person's] identity in the FDA Form 483."  Compl. ¶ 31; *see also* Nath Decl., Ex. E.

In response to the December 5 Plaintiff Letter, on May 10, 2023, FDA admitted that Plaintiff's job title identifies Plaintiff and is "widely known" (the "May 10 Response").  Compl. ¶ 35; *see also* Nath Decl., Ex. F.  Yet FDA rejected Plaintiff's request without citation to any precedent, the IOM, or other formal policy.  Compl. ¶¶ 36–37; *see also* Nath Decl., Ex. F.  FDA's only explanation for its action was a misplaced statement conflating Forms 483 with FDA Warning Letters and enforcement actions; however, Defendants backed away from this rationale in their motion to dismiss.  *Compare* Nath Decl., Ex. F (citing a "long-standing policy of releasing the

names of high-level officials *in warning letters and other enforcement or inspectional documents*" (emphasis added)), *with* Defs. Mem. 15 (noting that the FDA investigator's observations "consist[] of simply initial, on-the-spot observations").  In the May 10 Response, FDA also informed Plaintiff's counsel that it intended to post the Form 483 without redaction to the FDA website five business days after counsel's receipt of such notice, *i.e.*, on May 17, 2023. Compl. ¶ 35; *see also* Nath Decl., Ex. F.

With this deadline looming, Plaintiff's counsel sent an additional letter urging FDA to reconsider its position.  Compl. ¶ 38; *see also* Nath Decl., Ex. G.  On May 15, 2023, FDA denied Plaintiff's renewed request, stating that it "considered both FOIA Exemptions 6 and 7(C) in reaching its conclusion" and confirming that the agency intended to post the Form 483 "per its earlier letter," *i.e.*, on May 17, 2023 (the "May 15 Response").  Compl. ¶ 38; *see also* Nath Decl., Ex. H.  FDA again did not cite to any precedent, formal policies, or the IOM in its response.  *Id.*

As directed by FDA regulations implementing FOIA, on May 16, 2023, Plaintiff filed the instant action under the APA, 5 U.S.C. §§ 701–06, seeking to enjoin Defendants from publicly releasing Plaintiff's identity in connection with the Form 483.  21 C.F.R. §§ 20.47, 20.48.  On July 24, 2023, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), claiming that the Complaint fails to allege a cognizable reverse-FOIA claim and does not sufficiently allege a privacy interest that justifies invocation of FOIA Exemptions 6 and 7(C).  ECF No. 15.  Defendants did not provide Plaintiff with the administrative record or file a certified list of the record's contents simultaneously with the filing of their motion, as required under Local Rule 7(n)(1).  Rather, Defendants included in their motion to dismiss a motion for relief from compliance with Local Rule 7(n), which Plaintiff opposed separately, *see* ECF No. 18.  The Court preliminarily granted Defendants' motion for relief, holding that "whether an administrative record

9

is required may be revisited depending upon the outcome of the Motion to Dismiss."  August 3, 2023 Minute Order.

## STANDARD OF REVIEW

### A.    Motion to Dismiss

To avoid dismissal under Rule 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the complaint's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  When evaluating a complaint under this standard, the court must "construe a complaint liberally in the plaintiff's favor."  *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 436 F. Supp. 3d 354, 358 (D.D.C. 2020) (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).  Courts "must treat the complaint's factual allegations as true" and "grant the plaintiffs the benefit of all inferences that can be derived from the facts alleged."  *Ctr. for Biological Diversity v. Trump*, 453 F. Supp. 3d 11, 27 (D.D.C. 2020) (quotations omitted).  The Rule 12(b)(6) standard is "forgiving."  *Cal. Cattlemen's Assoc. v. U.S. Fish & Wildlife Serv.*, 315 F. Supp. 3d 282, 288 (D.D.C. 2018).

### B.    The APA and Reverse-FOIA Actions

The APA "sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts."  *Dept. of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1905 (2020) (quotations omitted).  Review under the APA helps to protect "ordinary individuals" who are "unexpectedly caught in the whipsaw" of unlawful and unreasoned agency behavior.  *Buffington v. McDonough*, 143 S. Ct. 14, 21 (2022) (Gorsuch, J., dissenting from the denial of certiorari).  "A person whose information is about to be disclosed pursuant to a FOIA request may file a 'reverse-FOIA action' and seek to enjoin the Government from disclosing

it." *Nat'l Bus. Aviation Ass'n, Inc. v. Fed. Aviation Admin.*, 686 F. Supp. 2d 80, 84 (D.D.C. 2010) (internal citation omitted).  In a reverse-FOIA action, "the Court reviews the agency's decision to release information under the [APA]."  *AAR Airlift Grp., Inc. v. U.S. Transp. Command*, 161 F. Supp. 3d 37, 41–42 (D.D.C. 2015).  This analysis requires the Court to determine whether an agency's decision to release information is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

Under this inquiry, the reviewing court "must consider whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment."  *Marsh v. Ore. Nat. Res. Council*, 490 U.S. 360, 378 (1989).  At a minimum, this requires that the agency "articulate[] an explanation establishing a 'rational connection between the facts found and the choice made.'"  *Nat'l Bus. Aviation*, 686 F. Supp. 2d at 84–85 (quoting *Bowen v. Am. Hosp. Ass'n*, 476 U.S. 610, 626 (1986)).  "[A]n agency's unexplained departure from precedent must be overturned as arbitrary and capricious" and "an agency must provide an adequate explanation to justify treating similarly situated parties differently."  *Comcast Corp. v. Fed. Commc'ns Comm'n*, 526 F.3d 763, 769 (D.C. Cir. 2008).  Courts should "not defer to the agency's conclusory or unsupported suppositions."  *Gen. Elec. Co. v. Dep't of the Air Force*, 648 F. Supp. 2d 95, 100 (D.D.C. 2009) (quotation marks omitted).

## ARGUMENT

## I.    THE COMPLAINT STATES A COGNIZABLE REVERSE-FOIA CLAIM UNDER THE ADMINISTRATIVE PROCEDURE ACT

### A.    Plaintiff's Reverse-FOIA Claim Was Properly Brought Under the APA.

Plaintiff has properly challenged FDA's refusal to redact references to Plaintiff's identity in the Form 483 under the APA, consistent with caselaw in this and other circuit courts.  *See, e.g.*, *Am. Farm Bureau Fed'n v. U.S. Env't Prot. Agency*, 836 F.3d 963, 970 (8th Cir. 2016) (holding

agency abused its discretion in deciding not to redact personal information such as names and addresses, where disclosure constituted a "clearly unwarranted invasion of personal privacy" under FOIA Exemption 6); *United Techs. Corp. v. U.S. Dep't of Def.*, 601 F.3d 557, 559, 562 (D.C. Cir. 2010) (holding, in a reverse-FOIA case, that the agency's "decision to release the documents was arbitrary, capricious, and contrary to law under the APA").

Given the straightforward nature of Plaintiff's claim here, it is surprising to see Defendants assert that Plaintiff must "invoke [] other law" to state a cognizable reverse-FOIA claim.  Defs. Mem. 8.  *First*, the Department of Justice FOIA Manual ("FOIA Manual") itself recognizes reverse-FOIA actions as those "brought by plaintiffs challenging a contemplated agency disclosure of information that the plaintiffs contended was exempt under [] FOIA exemptions."  Department of Justice Guide to the Freedom of Information Act: Reverse FOIA at 2–3, U.S. Dep't of Just., https://www.justice.gov/media/1027876/dl?inline.[3]   The FOIA Manual explains that reverse-FOIA cases can be premised upon FOIA and the APA without citing other statutes.

*Second*, to be clear, Plaintiff has not relied upon FOIA to *bring* this lawsuit, as Defendants imply.  Rather, Plaintiff has sued under the APA, just like the other reverse-FOIA lawsuits that came before this one.  *See* 5 U.S.C. §§ 701–06.  "A person whose information is about to be disclosed pursuant to a FOIA request may . . . seek to enjoin the Government from disclosing it." *Canadian Com. Corp. v. Dep't of Air Force*, 514 F.3d 37, 39 (D.C. Cir. 2008) (quoting *Chrysler Corp. v. Brown*, 441 U.S. 281, 317–18 (1979)).  The landmark case on reverse-FOIA claims is *Chrysler Corp. v. Brown*, in which the Supreme Court held that a reverse-FOIA action cannot be brought under FOIA, which does not confer "any right to enjoin agency disclosure"; rather, an

---

[3]   "At this motion-to-dismiss stage, the court may take judicial notice of publicly available information on official government websites."  *Whitlock v. U.S. Dep't of Homeland Sec.*, No. 21 Civ. 807, 2022 WL 424983, at *1 n.1 (D.D.C. Feb. 11, 2022).

agency's "decision to disclose" requested records is reviewable under the APA.  441 U.S. at 318.

The Supreme Court has never held, as Defendants assert, that a plaintiff "cannot rely on FOIA

exemptions to support a reverse-FOIA claim." Defs. Mem. 8.  Plaintiff's claim is properly brought

under Section 706 of the APA and is cognizable under such statute.

Plaintiff's case here, challenging FDA's failure to redact Plaintiff's identity from the Form

483, is similar to *American Farm Bureau Federation v. U.S. Environmental Protection Agency*.

There, plaintiffs brought a reverse-FOIA action under the APA challenging the agency's disclosure

of names, addresses, and other personally identifying information, relying on Exemption 6.  836

F.3d at 965.  The Eighth Circuit explained that Exemption 6 should be "construe[d] [] broadly as

a general exemption that excludes those kinds of files the disclosure of which might harm the

individual." *Id.* at 970 (quotation marks omitted).  Applying this principle, the court explained

that an individual "may have a substantial individual privacy interest in the disclosure of . . .

records if the disclosure of those files would harm the [individual] personally." *Id.*  The court held,

therefore, that the agency abused its discretion in deciding to disclose personal information,

including names, because protecting such information "constitute[d] a substantial privacy

interest," and disclosure could subject the individuals to "potential harassment." *Id.* at 971.

There is no question that personal privacy protections attach where, as here, an attorney

may face professional and reputational harm from being associated with allegations of misconduct.

In *Bloomgarden v. U.S. Department of Justice*, for example, the D.C. Circuit held that a letter

describing instances of "incompetence and insubordination" by a former Assistant United States

Attorney was protected from public disclosure under Exemption 6 because the public interest did

not outweigh the attorney's "substantial" privacy interest.  874 F.3d at 760–61.  As the court

explained, the letter contained "mere allegations," and the court was "concern[ed] with disclosure

of allegations" in conjunction with the attorney's identity, particularly because "the Assistant is now a practicing lawyer who would undoubtedly be quite embarrassed by disclosure of a proposed discipline letter from many years ago." *Id.* at 761; *see also Carter v. U.S. Dep't of Com.*, 830 F.2d 388, 389, 392 (D.C. Cir. 1987) (affirming application of Exemption 6 to information from patent attorney misconduct investigations, based on "the [agency's] reasonable determination that release of [that information] would identify patent attorneys who have been under investigation").

Instead of addressing this clear precedent, Defendants rely on non-APA cases or cases in which the privacy interests were not alleged. *See Detroit Int'l Bridge Co. v. Fed. Highway Admin.*, 666 F. Supp. 2d 740, 747 (E.D. Mich. 2009) (plaintiff sued to prohibit disclosure under FOIA and the Critical Infrastructures Protection Act of 2001, but not the APA); *Brancheau v. Sec'y of Lab.*, No. 6:11 Civ. 1416, 2012 WL 140239, at *1 (M.D. Fla. Jan. 18, 2012) (family members of a deceased animal trainer attempted to block release of a video under FOIA, the Privacy Act, and the Declaratory Judgment Act; although plaintiffs added an APA claim, they did not allege that disclosing the video constituted a clearly unwarranted invasion of personal privacy). These cases are easily distinguishable: Plaintiff's Complaint alleges violations of the APA and identifies a substantial privacy interest of an attorney.[4]

---

[4] Similarly, *Tripp v. Department of Defense* is distinguishable because that plaintiff claimed the agency violated the APA by releasing information without providing her notice in violation of the Privacy Act and FOIA. 193 F. Supp. 2d 229, 238 (D.D.C. 2002). The court dismissed the APA claim, reasoning that the plaintiff predicated her claim on the agency's violations of FOIA and the Privacy Act and had not "alleged any independent statutory basis" outside of these statutes. *Id.* at 239. By contrast, Plaintiff here alleges that FDA's refusal to redact Plaintiff's identity violates 21 U.S.C. § 374 and the agency's policy, precedent, and practice. Moreover, *Tripp* did not reference, as Plaintiff has, an agency's regulations implementing FOIA, which *direct* a plaintiff to file a lawsuit if such person will be affected by a proposed disclosure. *See* 21 C.F.R. § 20.48 (directing "a person who will be affected by a proposed disclosure of data or information contained in [FDA] records" to "institute suit in a United States District Court to enjoin release of the records involved"). In any event, neither the Supreme Court nor the D.C. Circuit has adopted this

This Court should reject Defendants' attempt to foreclose judicial review of this case, which would ignore precedent and agency policy and eviscerate the process Congress and FDA established for challenges to agency decision-making related to public disclosure of information affecting personal privacy interests.  21 C.F.R. § 20.48.

**B.    The Complaint Alleges Violations of the APA Predicated on Defendants' Refusal to Redact Personally-Identifying Information from a Form 483 that Exceeded the Scope of the Agency's Authority.**

Plaintiff has sufficiently stated a claim under the APA, premised on FDA's refusal to redact references to Plaintiff's identity in the Form 483.  Defendants acted arbitrarily and capriciously because (1) FDA did not follow its policy, practice, and precedent; and (2) the observations in the Form 483 exceed the scope of FDA's authority under 21 U.S.C. § 374.

**1.    Disclosure of Plaintiff's Identity in the Form 483 Is Contrary to FDA Policy, Practice, and Precedent.**

The IOM states that it "is the primary operational reference for FDA employees who perform field activities in support of the agency's public health mission" and "directs the conduct of all fundamental field activities."  IOM at Foreword 2022.[5]  Although Defendants note the IOM includes language that it "does not bind FDA," Defs. Mem. 12, what matters for a policy document such as the IOM is not whether it is labeled as "non-binding," but "if the agency administers it with binding effect."  *MediNatura, Inc. v. Food & Drug Admin.*, 496 F. Supp. 3d 416, 437 (D.D.C. 2020) (citing *Appalachian Power Co. v. Env't Prot. Agency*, 208 F.3d 1015, 1021 (D.C. Cir.

---

reasoning and held that a plaintiff bringing a reverse-FOIA claim must point to a law other than FOIA that required the withholding at issue.

[5]  Indeed, the FDA Enforcement Manual, a leading treatise, describes the IOM as the "'how-to' guide to inspectional procedures," stating that "FDA field investigators use it as a source of guidance on inspectional techniques, sampling methods, issuing 483s and every other standard aspect of an inspection."  FDA Enforcement Manual ¶ 281 (Jan. 2023 Supp.). And as explained by the FDA Enforcement Manual, "inspections generally conform to standard inspectional procedures as detailed in the FDA's Investigations Operations Manual (IOM)."  *Id.* ¶ 330.

2000)).   In previous cases, the FDA itself has relied on the IOM as evidence of the agency's practices and procedures.  *See, e.g.*, FDA Motion for Summary Judgment at n.7, *Nat. Res. Def. Council, Inc. et al. v. U.S. Food & Drug Admin. et al.*, No. 11 Civ. 3562, 2012 WL 13048814 (S.D.N.Y. Mar. 21, 2012) (submitting the IOM as evidence that "FDA's general approach is to encourage voluntary compliance whenever possible before initiating enforcement proceedings"); FDA Motion to Dismiss at n.1, *Regenerative Scis., Inc. v. U.S. Food & Drug Admin. et al.*, No. 09 Civ. 411, 2009 WL 2956105 (D. Colo. Apr. 29, 2009) (citing the IOM, rather than a statute or caselaw, to explain the purpose and use of Forms 483); FDA Motion to Dismiss and/or for Summary Judgment at n.24, *Beaty, et al. v. Food & Drug Admin. et al.*, No. 11 Civ. 289, 2011 WL 1491405 (D.D.C. Apr. 20, 2011) (same).   Courts rely on the IOM as evidence of FDA's implementation of its policies.  *See Cook v. Food & Drug Admin.*, 733 F.3d 1, 8 (D.C. Cir. 2013) (citing the IOM as evidence of FDA's interpretation of a statute as "giving it general authority to examine 'drugs . . . offered for entry into the United States'").

As explained in the IOM, "[c]onditions listed [in a Form 483 observation] should be significant and relate to an observed or potential problem with the facility, equipment, processes, controls, products, employee practices, or records."  IOM § 5.2.3.1.4.  The IOM instructs that ***names should not be used in observations***:  "It is preferred not to identify individuals or firms by name."  *Id.* (emphasis added).  Instead, if necessary, individuals or firms should be identified "***by substituting other non-specific identifying information***."  *Id.* (emphasis added).

Notwithstanding this clear instruction, the references at issue readily identify Plaintiff, as FDA admits.  *See* May 10 Response, Nath Decl., Ex. F (FDA stating that "[Plaintiff's] role as [job title] is widely known").  Plaintiff identified numerous examples where FDA had not identified individuals for the same Form 483 observations at issue here.  *See, e.g.*, December 5 Plaintiff

16

Letter, Nath Decl., Ex. E, at 4 n.5 (citing four Forms 483 issued to other companies containing similar observations and omitting the identity of any company lawyer or employees in connection with such observations).  FDA did not refute these examples nor provide any examples to the contrary in its response letters to Plaintiff.  *See* May 10 Response, Nath Decl., Ex. F; May 15 Response, Nath Decl., Ex. H.  Without the benefit of the administrative record at this stage in the case, Plaintiff must assume this is because there are none.

FDA's refusal to redact Plaintiff's identity in the Form 483 was arbitrary and capricious because the agency acted inconsistently with its policy, practice, and precedent for these Form 483 observations.  *See INS v. Yang*, 519 U.S. 26, 32 (1996) ("[A]n irrational departure from [a governing] policy . . . constitute[s] action that must be overturned as 'arbitrary, capricious, or an abuse of discretion' within the meaning of the [APA]."); *Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures.").

The cases on which Defendants rely do not change this conclusion.  *First*, these cases did not involve the IOM, which has the explicit purpose of being the "primary operational reference" for FDA employees.  IOM at Foreword 2022.  *Second*, these cases analyzed whether Import Alerts constitute final agency action, an issue that is irrelevant for this action.  *See MediNatura*, 496 F. Supp. 3d at 453 (determining that an Import Alert was "non-binding," and as such, "does not carry immediate legal consequences and thus does not constitute final agency action").  Finally, the *Vanda* case looked at whether FDA properly applied technical guidance in making its determination.  *Vanda Pharms., Inc. v. Food & Drug Admin.*, 436 F. Supp. 3d 256, 269 (D.D.C. 2020) (holding that FDA did not apply International Council for Harmonisation of Technical Requirements for Pharmaceuticals for Human Use Guidance as a binding legislative rule).  In stark

17

contrast here, Plaintiff cites the IOM and clear precedent to demonstrate FDA's policy not to disclose personally-identifying information.  *See id.*

> **2.**     **As Issued, the Form 483 Exceeds the Scope of FDA's Statutory Authority Under 21 U.S.C. § 374.**

The FDCA authorizes FDA investigators to inspect "in a reasonable manner" and issue Forms 483 at the conclusion of inspections conducted under Section 374(b) to "set[] forth any conditions or practices observed by him."  21 U.S.C. § 374(b)(1).  The challenged portions of the Form 483 here, however, are not reasonable and do not include "observations."  Instead, they contain credibility determinations and implications that Plaintiff, an attorney, in concert with outside counsel, improperly withheld information from FDA.  The FDA investigator did not "observe" Plaintiff; indeed, the investigator did not even speak to Plaintiff during the inspection.  Compl. ¶ 23.

The challenged Form 483 observations effectively chastise Plaintiff and the Company for invoking the attorney-client privilege, which protects "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice."  *Mead Data Cent. Inc., v. U.S. Dep't of Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977).  This is not the first time that the government has attempted to invade the sanctity of the attorney-client relationship in a matter involving the FDA.  *See United States v. Stevens*, No. 8:10 Cr. 694 (D. Md. Nov. 8, 2010).  In *Stevens*, the court granted a Rule 29 motion for judgment of acquittal in a criminal case brought against a company lawyer accused of making false statements to the FDA.  *See* Transcript at 10, *Stevens*, ECF No. 190 (May 10, 2011).  The *Stevens* Court recognized the "profound implications for the free flow of communications between a lawyer and client when the privilege is abrogated, as it was in this case" and recognized that "only with a jaundiced eye"

could a jury convict Stevens of crimes with which she was charged for her interactions with FDA. *Id.* at 3–4, 8.

The arbitrary and capricious nature of these observations is even more pronounced when examined in the context of the whole FDCA, which contains separate authorities to conduct criminal investigations and specific due process protections.  21 U.S.C. §§ 372, 335.  Should FDA seek to make these types of allegations about an individual's credibility, particularly an attorney bound by the duty of candor, it should follow this separate process and the U.S. Constitution.  That process is not the issuance and publication of a Form 483.

For these reasons, the Complaint states a cognizable claim under the APA.

C.    **Plaintiff Sufficiently Alleges that Plaintiff's Identity Falls Within FOIA Exemptions 6 and 7(C).**

To further explain the arbitrary and capricious nature of Defendants' actions here, Plaintiff draws on FOIA Exemptions 6 and 7(C).  While Plaintiff has not filed suit under FOIA because, as this Court is well aware, there is no right of action under FOIA to enjoin disclosure, the statute is an appropriate benchmark for the Court in reverse-FOIA cases.  *See, e.g.*, *Am. Farm Bureau Fed'n*, 836 F.3d at 970 (holding agency abused its discretion in deciding not to redact personal information which constituted a "clearly unwarranted invasion of personal privacy" pursuant to Exemption 6).  Identifying Plaintiff does not further the purpose of FOIA, and Plaintiff's personal privacy interest substantially outweighs any minimal public interest in disclosure.

1.    **Disclosure of a Private Citizen's Identity Does Not Further the Purpose of FOIA.**

FOIA's central purpose is to "ensure that *the Government's* activities be opened to the sharp eye of public scrutiny."  *U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 774 (1989) (emphasis in original).  The Supreme Court has held that "disclosure of records regarding private citizens, identifiable by name, is not what the framers of the FOIA had in mind."

*Id.* at 765; *see also Campaign for Fam. Farms v. Veneman*, No. 99 Civ. 1165, 2001 WL 1631459, at *3 (D. Minn. July 19, 2001) (finding an agency properly redacted the signature dates and zip codes of signatories to a petition "because of the distinct possibility that the information will be used to identify the signers of the petition").  FOIA was passed to ensure that the government's activities could be scrutinized by the public.  This goal is not served when a private individual's identity is released, which is why courts routinely withhold this information.

### 2.    Plaintiff's Job Title Readily Identifies Plaintiff.

As FDA acknowledged, Plaintiff's title is "widely known."  Nath Decl., Ex. F.  Therefore, failure to redact this title will reveal Plaintiff's identity.  *See, e.g.*, *Havemann v. Colvin*, 537 F. App'x 142, 147 (4th Cir. 2013) (upholding agency's use of Exemption 6 to withhold zip codes and other data that "are not unique identifiers, but that . . . function as unique identifiers because they can be combined with other available information to identify specific individuals"); *Walsh v. Dep't of Navy*, No. 91 Civ. 7410, 1992 WL 67845, at *4 (N.D. Ill. Mar. 23, 1992) (upholding under Exemption 6 redaction of "names and official positions of individuals who provided information to the investigating officer" because "[r]elease of the individuals' official positions would be tantamount to releasing their names"); *Ligorner v. Reno*, 2 F. Supp. 2d 400, 405 (S.D.N.Y. 1998) (finding that redaction of a complaint letter to an agency would be inadequate to protect individuals' identities because "the public could deduce the identities of the individuals whose names appear in the document from its context").

### 3.    Disclosure of Plaintiff's Identity Is an Unwarranted Invasion of Plaintiff's Personal Privacy.

FOIA recognizes that Plaintiff has a personal privacy interest under the two FOIA exemptions acknowledged by Defendants.  *See* Compl. ¶ 38.  FOIA Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly

unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). "The Supreme Court has read Exemption 6 broadly." *Jud. Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 152 (D.C. Cir. 2006) (citation omitted). FOIA Exemption 7(C) also provides context for withholding Plaintiff's identity from the Form 483 here, as it states that "records or information compiled for law enforcement purposes" which "could reasonably be expected to constitute an unwarranted invasion of personal privacy" can be withheld. 5 U.S.C. § 552(b)(7)(C). Applying these principles, this Court has previously held that private citizens' identities should be withheld from investigatory files. *See Jud. Watch, Inc. v. U.S. Dep't of Com.*, 337 F. Supp. 2d 146, 181 (D.D.C. 2004). Both provisions require agencies and reviewing courts to "balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information." *Beck v. U.S. Dep't of Just.*, 997 F.2d 1489, 1491 (D.C. Cir. 1993) (quotation marks omitted).

Defendants' argument that Plaintiff "has not adequately alleged a substantial privacy interest" to avoid disclosure under Exemptions 6 and 7(C) is legally incorrect. Defs. Mem. 14. The Supreme Court has rejected a "cramped notion of personal privacy," emphasizing that "privacy encompass[es] the individual's control of information concerning his or her person." *Reps. Comm.*, 489 U.S. at 763. Moreover, the D.C. Circuit has recognized "substantial" privacy interests at stake where, as here, disclosure of identities could lead to "embarrassment and potentially more serious reputational harm." *Senate of the Commonwealth of P.R. on Behalf of Judiciary Comm. v. U.S. Dep't of Just.*, 823 F.2d 574, 588 (D.C. Cir. 1987). The Circuit also has found that "annoyance or harassment in [persons'] official or private lives" constitute the kind of invasion that Exemption 7(C) was intended to prevent. *Weisberg v. U.S. Dep't of Just.*, 745 F.2d 1476, 1491 (D.C. Cir. 1984). For example, in *Lesar v. U.S. Department of Justice*, the D.C. Circuit sustained a 7(C) exemption, observing that "[i]t is difficult if not impossible, to anticipate all

respects in which disclosure might damage reputations or lead to personal embarrassment and discomfort."  636 F.2d 472, 488 (D.C. Cir. 1980); *see also Baez v. U.S. Dep't of Just.*, 647 F.2d 1328, 1339 (D.C. Cir. 1980) (enforcing the application of Exemption 7(C) where disclosure of the identity of FBI agents could subject them to "discomfort").

Here, Plaintiff has alleged more than mere "discomfort."  Documents like the Form 483 which carry "the imprimatur of an official investigation . . . threaten[] much greater damage to an individual's reputation than newspaper articles or editorial columns." *Bast v. U.S. Dep't of Just.*, 665 F.2d 1251, 1255 (D.C. Cir. 1981).  A future employer reviewing FDA's website would treat it as such, believing it to carry the "imprimatur of an official investigation," even though it contains only one investigator's unsubstantiated, "on-the-spot" observations. Defs. Mem. 15.  No employer would want to hire an attorney whose statements were characterized as untruthful by a regulator. In short, Plaintiff will be harmed because of the stigma that would attach to Plaintiff from the improperly issued Form 483 observations.

In this way, Plaintiff's circumstances are similar to *McCutchen v. U.S. Department of Health and Human Services*, where the D.C. Circuit explained that "allegations that may trigger an [Office of Scientific Integrity] inquiry . . . carry a stigma and can damage a career."  30 F.3d 183, 187 (D.C. Cir. 1994).  On this basis, the court held that the identities of scientists were protected from disclosure because "mere association with such allegations, even if they are never proven, could reduce a scientist's chances of securing grants or obtaining tenure." *Id.*; *cf. Goldstein v. Treasury Inspector Gen. for Tax Admin.*, No. 14 Civ. 02189, 2018 WL 3424259, at *1 (D.D.C. June 25, 2018) (finding privacy interests of individuals named in complaint and investigative files outweighed public interest, where such documents "relate[d] to allegations of possible wrongdoing" and "[n]othing more").

Agencies routinely redact under Exemptions 6 and 7(C) unique identifying information for professionals like attorneys, where disclosure of an individual's identity would violate the individual's privacy interests in protecting his or her personal and professional reputation, as well as future employment opportunities. *See, e.g.*, *Bloomgarden*, 874 F.3d at 760–61 (references to instances of "incompetence and insubordination" by attorney were protected from disclosure under Exemption 6 where the attorney "would undoubtedly be quite embarrassed by disclosure of a proposed discipline letter"); *Carter*, 830 F.2d at 389 (applying Exemption 6 to information from attorney misconduct investigations, where disclosure "would identify [] attorneys who have been under investigation").[6]

And FDA offers no rational public interest justification for the disclosure here.  In balancing personal privacy interests against those of the public, courts repeatedly express particular concern for protecting those whose names appear in connection with unproven allegations from the public embarrassment and damage to their reputations that a disclosure of their identities would cause.  *See, e.g.*, *Dep't of the Air Force v. Rose*, 425 U.S. 352, 381 (1976) (protecting from disclosure under Exemption 6 the identities of cadets in disciplinary records alleging honor code and ethics violations); *Malloy v. U.S. Dep't of Just.*, 457 F. Supp. 543, 546 (D.D.C. 1978) (finding that "disclosure of the identities . . . would result in an invasion of these individuals' privacy that far outweighs any public interest in such disclosure" because of the "damage to the suspects' reputations and the possible harassment"); *Nation Mag., Wash. Bureau*

_____

[6] Defendants argue that cases analyzing FOIA exemptions in standard FOIA cases are not relevant to the Court's analysis in reverse-FOIA actions, because the former is reviewed under a de novo standard while the latter is reviewed under the arbitrary and capricious standard.  Defs. Mem. 16 n.2.  Simply because the Court is reviewing an agency's determination under a different standard does not render immaterial all precedent analyzing exemptions under FOIA in the context of standard FOIA cases.  *See, e.g.*, *Am. Farm Bureau Fed'n*, 836 F.3d at 971 (citing standard FOIA cases analyzing Exemption 6 in its analysis of a reverse-FOIA claim).

*v. U.S. Customs Serv.*, 71 F.3d 885, 894 (D.C. Cir. 1995) (recognizing that the magnitude of a privacy interest turns on whether disclosure may result in reputational harm); *Rushford v. Civiletti*, 485 F. Supp. 477, 479–81 (D.D.C. 1980), *aff'd sub nom. Rushford v. Smith*, 656 F.2d 900 (D.C. Cir. 1981) (redacting the names of judges accused of, but never charged with, judicial misconduct because their privacy interests outweigh public interest in disclosure).

    **D.**    **Observations in Forms 483 Can and Have Led to Professional Harm.**

Defendants attempt to dismiss the threat to Plaintiff's reputation as "conclusory." Defs. Mem. 15–16. This argument should be rejected. While Forms 483 are not final determinations of wrongdoing, and are not supposed to reflect the results of a criminal investigation, as drafted the Form 483 here is improper and could be misinterpreted as reflecting such an investigation. *See McCutchen*, 30 F.3d at 187 (finding potential professional harm from "allegations, even if they are never proven" sufficient to justify withholding). As evidenced by the *Stevens* case, the government pursues in-house lawyers for allegedly withholding information from FDA. *See* Indictment, *Stevens*, ECF No. 149 (Apr. 13, 2011). Even though Stevens was ultimately acquitted by the Court, it is indisputable that the investigation, indictment, and trial caused her harm, including professional harm as a practicing attorney. Transcript at 10, *Stevens*, ECF No. 190.

Moreover, even properly issued Forms 483 can cause significant consequences for the companies and individuals referenced therein. For example, State Boards of Pharmacy have relied on observations contained within Forms 483 to initiate disciplinary action against pharmaceutical companies, citing to Form 483 inspectional observations as the source for their own allegations of wrongdoing under provisions of state law. *See, e.g.*, *In re Cantrell Drug Co.*, Case No. 6279 (Ca. Bd. of Pharmacy, Jan. 18, 2018), https://www.pharmacy.ca.gov/enforcement/accusations/ac176279.pdf.

Thus, it is not merely a "remote possibility of harm" (Defs. Mem. 15) to allege that disclosure of Plaintiff's identity in connection with these Form 483 observations, "judging the actions, knowledge, and veracity of statements, ascribed to . . . Plaintiff," "will result in serious reputational harm to Plaintiff and harm to Plaintiff's professional livelihood," including subjecting Plaintiff to state bar disciplinary proceedings, Compl. ¶¶ 23, 42, and generally impeding Plaintiff's ability to "practice [] law . . . and to allow [Plaintiff] to do the[] job of zealously representing the interests of [Plaintiff's] client," Transcript at 10, *Stevens*, ECF No. 190.

The cases on which Defendants rely do not change this conclusion. In *Arieff v. Dep't of Navy*, 712 F.2d 1462 (D.C. Cir. 1983), the court held that the names of prescription medications ordered by the Office of the Attending Physician for probable use by members of Congress or their families were disclosable ***because they would not identify the recipients*** of the drugs. *Id.* at 1467. Here, as FDA admits, disclosure of the Form 483 would identify Plaintiff. And *Bartko v. U.S. Dep't of Just.*, 898 F.3d 51, 66 (D.C. Cir. 2018), is inapposite. In that case, a criminal defendant filed FOIA requests to learn the results of investigations into a prosecutor in his case. The agency withheld these documents without individualized determinations of the relevant privacy and public interests, "sweepingly assert[ing] that the disclosure of any record regarding any allegation of misconduct would be an unwarranted invasion of [a prosecutor's] privacy." *Id.* The D.C. Circuit reversed the trial court's grant of summary judgment in favor of the agency, holding that the agency made "no apparent effort to weigh any privacy interest against the countervailing public interest in the disclosure of information concerning allegations of government attorneys' misconduct." *Id.* Rather, the agency made a "blanket invocation of Exemption 6." *Id.* at 67. By contrast, Plaintiff here has "specifically identif[ied] the privacy interest at stake," and seeks only limited redactions. *Id.* at 66. Unlike the agency in *Bartko*, Plaintiff did not "sweepingly assert[]"

that the Form 483 should be withheld from disclosure entirely (despite the fact that it was improperly issued).[7]

Plaintiff's inability to maintain Plaintiff's profession is a harm recognized by this Court. *See Bloomgarden*, 874 F.3d at 760–61.  The minimal public interest in disclosure of Plaintiff's identity cannot outweigh this harm.[8]

## II.   IN THE ALTERNATIVE, PLAINTIFF REQUESTS LEAVE TO AMEND OR THE PRODUCTION OF THE ADMINISTRATIVE RECORD

If the Court holds that Plaintiff has not alleged sufficient facts to state a claim under the APA, Plaintiff requests leave to amend the Complaint to add additional allegations to overcome any pleading deficiency.  Leave to amend a complaint under Federal Rule of Civil Procedure 15(a) "shall be freely given when justice so requires." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (citing Fed. R. Civ. P. 15(a)).  Such leave is appropriate "in the absence of undue delay, bad faith, undue prejudice to the opposing party, repeated failure to cure deficiencies, or futility." *Richardson v. United States*, 193 F.3d 545, 548–49 (D.C. Cir. 1999).  In the alternative, and for the reasons set forth in Plaintiff's opposition to Defendants' motion for relief from Local Rule 7(n), *see* ECF No. 18, Plaintiff requests that the Court require Defendants to produce the administrative record so that Plaintiff can allege additional facts regarding the arbitrary and capricious nature of FDA's decision to disclose Plaintiff's identity.[9]

---

[7]  Although Defendants contend that FOIA cases are inapplicable because they involve a different standard of review than reverse-FOIA cases, both *Arieff* and *Bartko*—relied on by Defendants— are indeed FOIA cases.  Def. Mem. 16 n.2.

[8]  Defendants also argue that Plaintiff has no basis to seek declaratory relief because Plaintiff has not alleged a cognizable cause of action.  Defs. Mem. 17.  As set forth above, Plaintiff has pled a cognizable reverse-FOIA claim under the APA.  Thus, Plaintiff is entitled to seek a "declaration of law that Plaintiff has a personal privacy interest that requires withholding certain information that would disclose Plaintiff's identity from public disclosure in the Form 483."  Compl. at 13.

[9]  Although the Court granted Defendants' motion for relief, it did so only preliminarily, holding that "whether an administrative record is required may be revisited depending upon the outcome of the Motion to Dismiss."  August 3, 2023 Minute Order.

## <u>CONCLUSION</u>

For the reasons stated above, Plaintiff respectfully requests that the Court deny Defendants' motion to dismiss.  In the event the Court grants the motion to dismiss, Plaintiff respectfully requests leave to amend the Complaint to address any deficiencies pursuant to Federal Rule of Civil Procedure 15(a)(2) or an order that Defendants produce the administrative record so Plaintiff can add factual allegations.

Dated:  August 17, 2023                              Respectfully submitted,


By:  */s/ Sonia W. Nath*
    Sonia W. Nath (DC Bar No. 977095)
    David E. Mills (DC Bar No. 401979)
    COOLEY LLP
    1299 Pennsylvania Ave., NW, Suite 700
    Washington, DC  20004-2400
    Telephone: (202) 776-2120
    Facsimile: (202) 842-7899
    snath@cooley.com
    dmills@cooley.com

    Victoria R. Pasculli (admitted *pro hac vice*)
    COOLEY LLP
    55 Hudson Yards
    New York, NY  10001-2157
    Telephone: (212) 479-6879
    Facsimile: (212) 479-6275
    vpasculli@cooley.com

    *Counsel for Plaintiff J. Doe*