**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| J. DOE,<br><br>               Plaintiff,<br><br>      v.<br><br>UNITED STATES FOOD AND DRUG ADMINISTRATION and UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>          Defendants. | Case No. 1:23-cv-01389-ABJ |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT........................................................................................................................2

I.      PLAINTIFF HAS FAILED TO INVOKE A NON-FOIA SOURCE OF AUTHORITY
        BARRING FDA FROM DISCLOSING PLAINTIFF'S JOB TITLE ..............................2

II.     THE COMPLAINT FAILS TO STATE A CLAIM UNDER FOIA EXEMPTIONS 6
        AND 7(C)...........................................................................................................8

III.    PLAINTIFF HAS NO RIGHT TO A DECLARATORY JUDGMENT BECAUSE HE
        OR SHE HAS NO RIGHT TO A REMEDY ...............................................................12

IV.     THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE ..........................12

CONCLUSION....................................................................................................................13

# TABLE OF AUTHORITIES

## Cases

*Abbas v. Foreign Pol'y Grp., LLC,*
  783 F.3d 1328 (D.C. Cir. 2015) .................................................................................. 12

*Am. Farm Bureau Fed'n v. U.S. Env't Prot. Agency,*
  836 F.3d 963 (8th Cir. 2016) ................................................................................... 3, 4

*Bast v. U.S. Dep't of Just.,*
  665 F.2d 1251 (D.C. Cir. 1981) .................................................................................. 11

*Bloomgarden v. United States Dep't of Just.,*
  874 F.3d 757 (D.C. Cir. 2017) ................................................................................... 10

*Campaign for Fam. Farms v. Glickman,*
  200 F.3d 1180 (8th Cir. 2000) ................................................................................. 3, 4

*Carter v. U.S. Dep't of Com.,*
  830 F.2d 388 (D.C. Cir. 1987) ................................................................................... 10

*\*Chrysler Corp. v. Brown,*
  441 U.S. 281 (1979) .......................................................................................... 2, 3, 4

*Citizens to Preserve Overton Park, Inc. v. Volpe,*
  401 U.S. 402 (1971) ................................................................................................... 3

*Comcast Corp. v. F.C.C.,*
  526 F.3d 763 (D.C. Cir. 2008)...................................................................................... 7

*Concilio De Salud Integral De Loiza, Inc. v. U.S. Dep't of Health & Hum. Servs.,*
  538 F. Supp. 2d 139 (D.D.C. 2008).............................................................................. 3

*\*Detroit Int'l Bridge Co. v. Fed. Highway Admin.,*
  666 F. Supp. 2d 740 (E.D. Mich. 2009) ...................................................................... 4

*Detroit Int'l Bridge Co. v. Canada,*
  192 F. Supp. 3d 54 (D.D.C. 2016) .............................................................................. 3

*\*Doe, 1 v. Fed. Election Comm'n,*
  920 F.3d 866 (D.C. Cir. 2019) ............................................................................ 4, 8, 9

*Graff v. F.B.I.,*
  822 F. Supp. 2d 23 (D.D.C. 2011) .............................................................................. 7

*Harris v. Mayorkas,*
  2022 WL 3452316 (D.D.C. Aug. 18, 2022) ............................................................... 8

*In re Tylenol (Acetaminophen) Mktg., Sales Pracs. & Prod. Liab. Litig.,*
  181 F. Supp. 3d 278 (E.D. Pa. 2016) .......................................................................... 5

*I.N.S. v. Yueh-Shaio Yang*,
    519 U.S. 26 (1996) ............................................................................................... 7

*Int'l Brotherhood of Teamsters v. U.S. Dep't of Transp.*,
    861 F.3d 944 (9th Cir. 2017) ............................................................................. 3

*Jud. Watch, Inc. v. Food & Drug Admin.*,
    449 F.3d 141 (D.C. Cir. 2006) ................................................................... 10, 11

*\*King & Spalding, LLP v. U.S. Dep't of Health & Hum. Servs.*,
    395 F. Supp. 3d 116 (D.D.C. 2019) ................................................................ 8, 9

*Lesar v. U.S. Dep't of Just.*,
    636 F.2d 472 (D.C. Cir. 1980) ......................................................................... 11

*Lunney v. United States*,
    319 F.3d 550 (2d Cir. 2003) .............................................................................. 3

*McCutchen v. U.S. Dep't of Health & Hum. Servs.*,
    30 F.3d 183 (D.C. Cir. 1994) ........................................................................... 10

*Serono Lab'ys, Inc. v. Shalala*,
    158 F.3d 1313 (D.C. Cir. 1998) ......................................................................... 7

*Senate of the Com. of Puerto Rico on Behalf of Judiciary Comm. v. U.S. Dep't of Just.*,
    823 F.2d 574 (D.C. Cir. 1987) ......................................................................... 11

*Sisseton-Wahpeton Oyate of Lake Traverse Rsrv. v. United States Corps of Engineers*,
    124 F. Supp. 3d 958 (D.S.D. 2015) ............................................................ 12, 13

*United States v. Stevens*,
    No. 8:10 Cr. 694 (D. Md.) ............................................................................... 10

*\*Washington Post Co. v. U.S. Dep't of Just.*,
    863 F.2d 96 (D.C. Cir. 1988) ............................................................................ 9

*Weisberg v. U.S. Dep't of Just.*,
    745 F.2d 1476 (D.C. Cir. 1984) ....................................................................... 11

*Watervale Marine Co. v. United States Dep't of Homeland Sec.*,
    55 F. Supp. 3d 124 (D.D.C. 2014) ..................................................................... 3

*Whiting v. AARP*,
    637 F.3d 355 (D.C. Cir. 2011) ......................................................................... 12

**Statutes**

5 U.S.C. § 701(a)(2) ............................................................................................ 2, 3

21 U.S.C. § 374 .................................................................................................... 4, 5

**Regulations**

21 C.F.R. § 10.85(k) .................................................................................................. 7

21 C.F.R. § 20.20 ..................................................................................................... 5

21 C.F.R. § 20.47 ..................................................................................................... 5

21 C.F.R. § 20.48 ..................................................................................................... 5

21 C.F.R. § 20.64(a)(3) ............................................................................................ 5

21 C.F.R. § 20.67 ..................................................................................................... 5

**Other**

Investigations Operations Manual, U.S. Food & Drug Admin. (2022),
    https://public4.pagefreezer.com/browse/FDA/31-12-
    2022T07:59/https:/www.fda.gov/media/113432/download ................................... 6

**INTRODUCTION**

The primary dispute before the Court in Defendants' Motion to Dismiss is whether Plaintiff's Complaint states a claim upon which the Court could issue an order prohibiting the United States Food and Drug Administration ("FDA") from releasing Plaintiff's job title in a Form FDA 483 issued to Plaintiff's employer.  As explained in Defendants' opening brief and confirmed below, it is well established that a plaintiff in such a "reverse-FOIA" suit must identify a non-FOIA source of authority that prohibits the agency from disclosing the information under dispute, but Plaintiff here fails to do so.  Plaintiff's principal argument is that a reverse-FOIA plaintiff may simply invoke the Administrative Procedure Act ("APA") and claim that the agency's decision to release information protected by a FOIA exemption is arbitrary and capricious, or contrary to FOIA, under the APA.  But that obscures the fact that an APA claim must be based on some substantive standard limiting agency conduct for a court to apply when evaluating an agency's decision, and again, in a reverse-FOIA case, that standard can't be FOIA and its exemptions.  Plaintiff does not identify any bar to disclosure of Plaintiff's job title in the Federal Food, Drug, and Cosmetic Act ("FDCA"), or applicable regulations, and Plaintiff's complaints about the content of the Form 483 are irrelevant to the inquiry at issue.  Plaintiff's arguments about FDA's practice in preparing Forms 483 are equally misguided.

Additionally, and in the alternative, Plaintiff has failed to plausibly allege a substantial privacy interest that might be protected by FOIA Exemptions 6 and 7(C).  Plaintiff has no substantial privacy interest in the actions taken on behalf of his or her employer in a representative capacity when Plaintiff was not a "target" of FDA's civil inspections of Plaintiff's employer.

The Court should therefore dismiss the Complaint, with prejudice and without requiring an administrative record.  Plaintiff's proposed grounds for amending the Complaint do not address

the legal flaws that Defendants have identified, and no administrative record should be required

before Plaintiff has set out a plausible claim.

**ARGUMENT**

I.     **PLAINTIFF HAS FAILED TO INVOKE A NON-FOIA SOURCE OF AUTHORITY
       BARRING FDA FROM DISCLOSING PLAINTIFF'S JOB TITLE**

Plaintiff has not plausibly stated a reverse-FOIA claim for the relief sought in the

Complaint:  An injunction that would prohibit Defendants from releasing Plaintiff's job title in a

Form FDA 483 issued to Plaintiff's employer.  Defendants' opening brief demonstrated that

because "FOIA is exclusively a disclosure statute," a reverse-FOIA plaintiff cannot obtain relief

without citing some non-FOIA authority that would prohibit an agency from disclosing the

information in question.  Defs.' Mot. at 8; *Chrysler Corp. v. Brown*, 441 U.S. 281, 292 (1979)).

In the seminal case of *Chrysler Corp.*, the Supreme Court explained that FOIA does not limit

agencies' discretion to release private individuals' and entities' information in government files,

even if that information is considered confidential by the individual or entity.  441 U.S. at 292–93

(Congress' concern in enacting FOIA "was with the *agency's* need or preference for

confidentiality; the FOIA by itself protects the submitters' interest in confidentiality only to the

extent that this interest is endorsed by the agency collecting the information.").  "It necessarily

follow[ed]" from this conclusion that FOIA "[did] not afford Chrysler any right to enjoin agency

disclosure." *Id*. at 294.

Plaintiff argues in opposition that a reverse-FOIA plaintiff need only claim that an agency's

decision to release information protected by a FOIA exemption is arbitrary and capricious, or

contrary to FOIA, under the APA.  Opp. at 11–15.  But as *Chrysler Corp.* itself recognized, the

APA is merely the procedural vehicle for a reverse-FOIA claim, in that it supplies the waiver of

sovereign immunity and the private right of action to enjoin agency disclosure.  *Chrysler Corp.*,

441 U.S. at 317–18.  One of the exceptions to APA review is where agency action is committed to agency discretion by law, 5 U.S.C. § 701(a)(2)—*i.e.*, "where statutes are drawn in such broad terms that in a given case there is no law to apply."  *Chrysler Corp.*, 441 U.S.at 317 (cleaned up) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971)).  Thus, for the APA to apply, there must be "substantive" "standards limiting agency conduct which might constitute 'law to apply.'"  *Id.* at 317–18.  In other words, "the APA's arbitrary and capricious standard cannot be sufficient by itself to provide the requisite meaningful standard for courts to apply in evaluating the legality of agency action."  *Concilio De Salud Integral De Loiza, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 538 F. Supp. 2d 139, 147 (D.D.C. 2008) (cleaned up); *see also Lunney v. United States*, 319 F.3d 550, 559 n.5 (2d Cir. 2003); *Int'l Brotherhood of Teamsters v. U.S. Dep't of Transp.*, 861 F.3d 944, 955 (9th Cir. 2017) ("arbitrary and capricious review does not apply in the absence of a statutory benchmark against which to measure an agency's exercise of discretion").  That standard must come from another source of authority.  *See, e.g.*, *Detroit Int'l Bridge Co. v. Canada*, 192 F. Supp. 3d 54, 78 (D.D.C. 2016) ("When deciding whether an agency action was arbitrary or capricious, courts must determine the scope of the duty imposed on the agency by Congress in the relevant substantive statute.") (citation omitted); *Watervale Marine Co. v. United States Dep't of Homeland Sec.*, 55 F. Supp. 3d 124, 138 (D.D.C. 2014) (Jackson, Ketanji, J.) (statutes and regulations contained no applicable "limits, requirements, or criteria that provide[d] any guideposts" for the court's review).

Plaintiff relies heavily on *American Farm Bureau Federation v. U.S. Environmental Protection Agency*, 836 F.3d 963 (8th Cir. 2016), but that case does not support Plaintiff's argument.  At the outset, the court recognized the above principles—that an agency has discretion to disclose information protected by a FOIA exemption, "'unless something independent of FOIA

prohibits disclosure,'" 836 F.3d at 970 (quoting *Campaign for Fam. Farms v. Glickman*, 200 F.3d 1180, 1185 (8th Cir. 2000)), and that "[a]s a disclosure statute, FOIA provides only a cause of action to compel disclosure; it does not provide a means of preventing disclosure," *id.* at 970 (citing *Chrysler Corp.*). And while the court proceeded to analyze the plaintiffs' claim that the personal information, "including names, home addresses, telephone numbers, GPS coordinates of homes, and information from which financial information could be gleaned," was exempt from mandatory disclosure under FOIA's Exemption 6, *id.* at 970–74, it ultimately hewed to *Chrysler Corp.* at the end of the opinion by declining to enter an injunction and remanding the case for a determination of whether "something independent of FOIA prohibit[ed] disclosure," despite the fact that the case was brought under the APA. *Id.* at 974 (quotation marks omitted).

In *Chrysler Corp.*, the "substantive limits on agency action" were found in the Trade Secrets Act, 18 U.S.C. § 1905, which does constrain an agency's discretion to disclose certain information, unlike FOIA, which does not. 441 U.S. at 294, 317–18; *see also Detroit Int'l Bridge Co. v. Fed. Highway Admin.*, 666 F. Supp. 2d 740, 746–47 (E.D. Mich. 2009) ("FOIA leaves to agency discretion the decision whether to disclose otherwise exempted information; therefore some other law must mandate withholding before the APA can be used to obtain such relief.") (citing *Glickman*, 200 F.3d at 1185); *Doe, 1 v. Fed. Election Comm'n*, 920 F.3d 866, 872 n.10 (D.C. Cir. 2019) ("[m]any reverse-FOIA cases are explained in light of the Trade Secrets Act, 18 U.S.C. § 1905, which can constrain an agency's disclosure discretion"). In their opening brief, Defendants noted that Plaintiff does not claim that his or her job title is a trade secret, Defs.' Mot. at 10, and Plaintiff does not so claim in his or her opposition brief.

Defendants' opening brief also established that Plaintiff has identified no provision of the FDCA that constrains Defendants' discretion to disclose Plaintiff's job title, including 21 U.S.C.

§ 374. Defs.' Mot. at 9–11. In opposition, Plaintiff takes issue with the contents of the Form 483 issued to his or her employer, claiming they are not "reasonable and do not include 'observations'" but rather contain credibility determinations and accuse Plaintiff of improperly withholding information from FDA, all allegedly contrary to 21 U.S.C. § 374. Opp. at 18–19. But this case is not a challenge to the contents of the Form 483 or whether its author exceeded his authority under Section 374 in drafting it. In other words, this isn't a claim under the APA that the Form 483 at issue is arbitrary and capricious or exceeds the agency's authority. Nor could it be, given Plaintiff's concession that the Form 483 is not final agency action. Compl. ¶ 2, Opp. at 24; *see also In re Tylenol (Acetaminophen) Mktg., Sales Pracs. & Prod. Liab. Litig.*, 181 F. Supp. 3d 278, 297 (E.D. Pa. 2016) ("The Form 483 is not considered a final corrective action by the agency . . . ."). Rather, the case is a reverse-FOIA action that seeks to enjoin Defendants from publicly releasing Plaintiff's job title on the Form 483, and the issue for present purposes is simply whether Plaintiff has identified any non-FOIA authority preventing that disclosure. There is nothing about Plaintiff's argument that advances that goal.

Likewise, Plaintiff's opposition fails to cite any regulation that prohibits Defendants from releasing Plaintiff's job title. *See* Defs.' Mot. at 11–12. Plaintiff cites a series of regulations providing that Defendants *may* withhold information that is subject to FOIA Exemptions. *See* Opp. at 4–5 (citing 21 C.F.R. § 20.20(a), 21 C.F.R. § 20.64(a)(3), 21 C.F.R. § 20.67). That is undisputed, but it is not the relevant question. Plaintiff similarly does not explain how 21 C.F.R. §§ 20.47, 20.48 relate to the merits of a reverse-FOIA action, as opposed to simply creating procedures through which FDA resolves uncertainties and disputes related to information disclosure. Thus, Plaintiff has still failed to direct the Court to any regulation that would prohibit Defendants from releasing Plaintiff's job title.

Nor can Plaintiff rely on the Investigations Operations Manual[1], which is not binding authority on FDA, to support his or her reverse-FOIA claim, as shown in Defendants' opening brief. *See* Defs' Mot. at 12–13. Section 5.2.3.1.4 of the Manual guides investigators in drafting Forms 483 in the first instance; it says nothing about whether Defendants may release the contents of those records after the fact. That section begins by guiding investigators on what questions to "answer" "when formulating each" Form 483. Notes are provided on how to "[e]nter" and "list[]" observations, what details to "include," and how to "generate" a copy of the report. *Id.* There are no guidelines in this section that address what information is suitable for public release. Moreover, inclusion of Plaintiff's job title in the Form 483 in the first place was simply not at odds with the Manual's preference (but not mandate) that names of individuals or firms not be used. The author of the Form 483 used Plaintiff's job title instead of his or her name, thereby "substituting other non-specific identifying information . . . to show the observation's relationship to a particular firm and/or individual" as the Manual suggests. *See* Defs.' Mot. at 3–4, 13 (cleaned up). Plaintiff argues that "[n]otwithstanding this clear instruction, the references at issue readily identify Plaintiff," Opp. at 16, but the "instruction" is to use "other non-specific *identifying* information to show [an] observation's relationship to a *particular* firm and/or individual." Investigations Operations Manual, § 5.2.3.1.4 (emphases added). It is also undisputed that the Form 483 did not use Plaintiff's name. *See* Compl. ¶ 24.

Lastly, Plaintiff argues that FDA has a practice of not identifying individuals on Forms 483, citing four that were allegedly "issued to other companies containing similar observations [as the Form 483 at issue here] and omitting the identity of any company lawyer or employees in

---

[1]    Investigations    Operations    Manual,    U.S.    Food    &    Drug    Admin.    (2022), https://public4.pagefreezer.com/browse/FDA/31-12-2022T07:59/https:/www.fda.gov/media/113432/download.

connection with such observations." Opp. at 17 (citing Nath Decl., Ex. E, at 4 n.5).  As an initial

matter, Plaintiff cites no case for the proposition that an agency practice can constitute the non-

FOIA source of authority preventing disclosure for a reverse-FOIA claim, and Defendants are

aware of none.  And while Plaintiff cites a case about it possibly being arbitrary or capricious for

an agency to irrationally depart from agency policy, Opp. at 17 (citing *I.N.S. v. Yueh-Shaio Yang*,

519 U.S. 26, 32 (1996)), four Forms 483 barely constitute a practice, let alone a policy.  *Cf. Graff*

*v. F.B.I.*, 822 F. Supp. 2d 23, 35 (D.D.C. 2011) (determining whether an agency has departed from

"established policy" for this type of claim "is tricky" "since neither party has put its finger on a

specific formal guideline").  For one thing, it is not plausible that the investigators who prepared

these Forms 483 could set agency policy with respect to redaction decisions since "an agency is

not bound by unchallenged staff decisions." *Comcast Corp. v. F.C.C.*, 526 F.3d 763, 769 (D.C.

Cir. 2008); *see also id.* at 768–70 & n.3 (dismissing petition for review arguing that denial of

waiver request was arbitrary and capricious as inconsistent with the agency's prior actions and

policies because "staff-level inconsistency does not render an agency action arbitrary and

capricious"); *Serono Lab'ys, Inc. v. Shalala*, 158 F.3d 1313, 1321 n.2 (D.C. Cir. 1998) (trial court

was incorrect to interpret minutes of meeting with FDA staff as "implicitly" rendering agency

decision because "the views of FDA staff do not bind the agency's final decisionmaker"); *cf.* 21

C.F.R. § 10.85(k) (setting forth limited contexts in which oral and written statements by FDA

employees can act to "bind or otherwise obligate or commit the agency").

        The factual basis for this argument is also flawed.  There are dozens of employee names

and job titles left unredacted in the four Forms 483 Plaintiff relies on.  *See, e.g.*, Nath Decl., Ex. B

at 50–52, 80, 149, 171, 203 (citations to pages in PDF file).

Moreover, Plaintiff provides no non-conclusory allegation that the four Forms 483 are similarly situated to the one at issue here, such as would allow the Court to infer a course of conduct that is relevant to this case. *See* Compl. ¶33; Opp. at 17; *see, e.g.*, *Harris v. Mayorkas*, 2022 WL 3452316, at *6 (D.D.C. Aug. 18, 2022) ("While the Amended Complaint generally avers that similarly situated co-workers outside of . . . her race were not treated in the manner in which she was, Plaintiff offers no facts to back that up, rendering the allegation just a legal conclusion—and a legal conclusion is never enough.") (cleaned up).

## II.   THE COMPLAINT FAILS TO STATE A CLAIM UNDER FOIA EXEMPTIONS 6 AND 7(C)

For all of the above reasons, the Court should dismiss the Complaint for failure to state a claim. In the alternative, as argued in Defendants' opening brief, Plaintiff has not plausibly alleged a substantial privacy interest in the disclosure of his or her job title for purposes of FOIA's Exemptions 6 and 7(C). Defs.' Mot. at 13–17. The Form 483 refers to Plaintiff acting in a representational capacity as counsel for Plaintiff's employer:  communicating, acting, and invoking privileges on behalf of Plaintiff's client. *See* Nash Decl. Ex. B 11–12; Opp. at 18 (claiming that the "observations effectively chastise Plaintiff and the Company for invoking the attorney-client privilege"). This type of business activity does not implicate a substantial privacy interest under Exemptions 6 and 7(C). *See Doe, 1*, 920 F.3d at 872–73 (permitting release of documents containing evidence that a trust and trustee had "assist[ed] [a] person" in an election law violation, even though "this would be tantamount to revealing the name of the trustee as well" because a "trustee's privacy interest in his representational capacity is minimal"); *King & Spalding, LLP v. U.S. Dep't of Health & Hum. Servs.*, 395 F. Supp. 3d 116, 122–23 (D.D.C. 2019) (lawyers had no substantial expectation of privacy in their identities "when acting in their

representational capacities" by "relaying information to the government, presumably at the direction of their client").

In opposition, Plaintiff relies on the alleged harm to his or her professional reputation from disclosure of his or her job title in the Form 483, arguing that the Form 483 carries the imprimatur of an official investigation, that a future employer reviewing FDA's website would view it as such, and that "[n]o employer would want to hire an attorney whose statements were characterized as untruthful by a regulator." Opp. at 22. But "information relating to business judgments and relationships does not qualify for exemption . . . even if disclosure might tarnish someone's professional reputation." *Washington Post Co. v. Dep't of Just.*, 863 F.2d 96, 100 (D.C. Cir. 1988) (explaining that the requested report "would not reveal anything of a private nature about any employees mentioned, as it is an investigation and assessment of the business decisions of [a pharmaceutical company's] employees during the development and marketing of a commercial product"); *accord Doe, 1*, 920 F.3d at 873.

"[I]t is true that the protection accorded reputation would generally shield material when disclosure would show that an individual was the target of a law enforcement investigation," as that heightens the individual's privacy interest. *Washington Post Co.*, 863 F.2d at 101. But there is no allegation here that Plaintiff was a "target" of the civil inspection that the Form 483 documented. *Cf.* Compl. ¶ 21 ("Plaintiff . . . did not interact with FDA during the inspection."); *id.* ¶ 22 ("At the conclusion of the inspection, FDA issued a Form 483 to the site lead for the Company (not Plaintiff)."); *id.* ¶ 23 ("FDA investigators never spoke to Plaintiff during the inspection."). The Form 483 at issue here is at the opposite end of the spectrum from an investigation directed at Plaintiff—the observations in the Form 483 are mere initial, on-the-spot observations that the Company has substantively responded to, as Plaintiff concedes (*see* Compl.

9

¶ 26; Opp. at 6–8); they only obliquely address Plaintiff; and they do not accuse Plaintiff of anything that might, standing alone, plausibly lead to a state bar disciplinary proceeding against Plaintiff. *See* Nath Decl. Ex. B at 11–12. While Plaintiff cites to State Boards of Pharmacy relying on observations contained in Forms 483 to initiate disciplinary action against pharmaceutical companies (Opp. at 24), Plaintiff cites to no instance where a State bar has initiated disciplinary action against an in-house lawyer based on an observation in a Form 483—the relevant context here.

The principal cases relied upon by Plaintiff involved individuals who were the targets of misconduct investigations—not just individuals who worked for investigated companies or entities—and are therefore distinguishable. For example, in *McCutchen v. U.S. Department of Health & Human Services*, 30 F.3d 183, 184, 187–88 (D.C. Cir. 1994), the court held that Exemption 7(C) protected the names of scientists who HHS had investigated for scientific misconduct such as plagiarism, fabrication of research results, and other breaches of academic integrity, but did not find guilty of any wrongdoing. *See also Carter v. U.S. Dep't of Com.*, 830 F.2d 388, 391–92 (D.C. Cir. 1987) (permitting redactions to shield identities of patent attorneys who the Patent & Trademark Office had investigated for alleged disciplinary violations); *Bloomgarden v. United States Dep't of Just.*, 874 F.3d 757, 758–61 (D.C. Cir. 2017) (former AUSA had privacy interest in a proposed termination letter from U.S. Attorney that "alleged a series of professional inadequacies" on his part, and led to his resignation as part of a settlement). Indeed, Plaintiff highlights *United States v. Stevens*, No. 8:10 Cr. 694 (D. Md.), "a criminal case brought against a company lawyer accused of making false statements to the FDA," and emphasizes the harm caused to the lawyer by "the investigation, indictment, and trial." Opp. at 18, 24.

Many of Plaintiff's cited cases also involved far more inflammatory and infamous contexts than what is noted in the Form 483 issued to Plaintiff's employer.  For example, in *Judicial Watch v. Food & Drug Administration*, 449 F.3d 141, 153 (D.C. Cir. 2006), the court concluded that FDA properly asserted "abortion-related violence as a privacy interest for both the names and addresses of persons and businesses associated with mifepristone."   Another case involved records of investigation by the Department of Justice Civil Rights Division and the FBI after Puerto Rican police killed two political activists.  *Senate of the Com. of Puerto Rico on Behalf of Judiciary Comm. v. U.S. Dep't of Just.*, 823 F.2d 574, 577–78, 588 (D.C. Cir. 1987) (approving redactions of "identity of targets of law-enforcement investigations" as well as "witnesses, informants, and the investigating agents").  Two other cases arose in the context of FOIA requests for the FBI's investigatory files related to Dr. Martin Luther King, Jr.'s assassination.  *Weisberg v. U.S. Dep't of Just.*, 745 F.2d 1476, 1491 (D.C. Cir. 1984) (approving redaction of the names of investigated parties, witnesses, unspecified third parties, and FBI agents); *Lesar v. U.S. Dep't of Just.*, 636 F.2d 472, 486–488 (D.C. Cir. 1980) (similar).  Another case involved records detailing a criminal investigation into potential obstruction of justice by a federal judge, which resulted in no charges. *Bast v. U.S. Dep't of Just.*, 665 F.2d 1251, 1252–55 (D.C. Cir. 1981) (approving redaction of "allegations of wrongdoing by suspects who never were prosecuted or the names of third parties who had some role in an investigation").

In sum, Plaintiff offers no reason to depart from Chief Judge Boasberg's conclusion, in ruling on Plaintiff's motion to proceed under a pseudonym, that Plaintiff's theory of harm to his or her professional reputation from the disclosure of his or her job title in the Form 483 is "speculative and unsubstantiated."  ECF No. 7 at 4 (quotation marks omitted).

11

### III.    **PLAINTIFF HAS NO RIGHT TO A DECLARATORY JUDGMENT BECAUSE HE OR SHE HAS NO RIGHT TO A REMEDY**

Plaintiff concedes that his or her right to a declaratory judgment rises and falls with whether the Complaint states a claim for which relief can be granted, as Defendants argued. Opp. at 26 n.8.

### IV.    **THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE**

The Court should dismiss the Complaint with prejudice, as Plaintiff has not indicated how any amendment of the Complaint would cure its deficiencies. *See* Opp. at 26. Dismissal with prejudice, without leave to amend, "is warranted when 'the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1340 (D.C. Cir. 2015) (citation omitted). Plaintiff has already had an opportunity to identify a non-FOIA source of authority that could prohibit the release of Plaintiff's job title and has failed to do so, as explained above and in Defendants' opening brief. Thus, the Court would be well within its discretion to conclude that Plaintiff "'could not possibly cure the deficiency'" that Defendants have identified. *Id.* (citation omitted); *Whiting v. AARP*, 637 F.3d 355, 365 (D.C. Cir. 2011) ("The problem with Whiting's case is not improper pleading; it is that her claims are legally defective, and she did not identify any new claims or allegations that would cure the defects.").

The administrative record is not relevant to any question currently before the Court, as the Court already decided in its August 3, 2023, Minute Order. *See* Opp. at 26. And Plaintiff provides no authority for its request that Defendants be required to produce the administrative record so that Plaintiff can use it to develop or fortify an amended complaint. *See id.*; *Sisseton-Wahpeton Oyate of Lake Traverse Rsrv. v. United States Corps of Engineers*, 124 F. Supp. 3d 958, 963 (D.S.D.

2015), *aff'd,* 888 F.3d 906 (8th Cir. 2018) ("this Court will not allow the Tribe to amend its claims

through a motion to compel or a motion to supplement the record").

## CONCLUSION

For all the foregoing reasons and the reasons set forth in Defendants' opening brief,

Defendants respectfully request that the Court dismiss Plaintiff's Complaint with prejudice.

DATED: September 7, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MARCIA M. BERMAN
Assistant Director, Federal Programs Branch

*/s/ James C. McGlinchy*
JAMES C. MCGLINCHY
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Phone: (202) 305-0593
Email: james.c.mcglinchy@usdoj.gov

OF COUNSEL:

SAMUEL R. BAGENSTOS
General Counsel
U.S. Department of Health and Human
Services

MARK RAZA
Chief Counsel

WENDY S. VICENTE
Deputy Chief Counsel, Litigation

JOSHUA A. DAVENPORT
Associate Chief Counsel
Office of the Chief Counsel
U.S. Food and Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD 20993-0002
Phone: (301) 796-6717
Email: joshua.davenport@fda.hhs.gov

*Attorneys for Defendants*