**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

J. DOE,

        Plaintiff,

    v.

UNITED STATES FOOD AND DRUG
ADMINISTRATION and UNITED
STATES DEPARTMENT OF HEALTH
AND HUMAN SERVICES,

        Defendants.

Case No. 1:23-cv-01389 (ABJ)

**[PROPOSED] FIRST AMENDED COMPLAINT
FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff J. Doe, by and through the undersigned counsel, files this First Amended Complaint against the United States Food and Drug Administration ("FDA") and the United States Department of Health and Human Services ("HHS") and alleges as follows:

**INTRODUCTION**

1.      FDA regulations direct a Plaintiff, such as J. Doe, to seek relief under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–06, when they are informed that FDA intends to disclose information to which a party objects.

2.      Here, Plaintiff engaged with FDA following an FDA inspection at Plaintiff's employer (the "Company"), which resulted in the issuance of an FDA Form 483 (the "Form 483"). A Form 483 is a report of inspectional observations.

3.      The Form 483 reveals Plaintiff's identity, which is something that FDA's own Investigations Operations Manual ("IOM") instructs against, directing agency personnel to use information that would not specifically identify an individual.

4.      Given this agency policy, and the fact that FDA intended to disclose the Form 483, Plaintiff engaged in a letter-writing campaign with FDA to request certain narrowly-tailored redactions from the Form 483 that would identify Plaintiff and the external counsel relied upon by Plaintiff's employer during the FDA inspection, consistent with the exemptions articulated in the Freedom of Information Act ("FOIA") and FDA's disclosure regulations.

5.      While FDA agreed to redact the identity of the external counsel under an exemption to FOIA, FDA refused to do the same for Plaintiff.  That is, rather than follow agency policy here, the agency denied Plaintiff's request as it pertains to Plaintiff's identity and informed Plaintiff that it intended to disclose the information.  Specifically, on May 15, 2023, in a final agency action, FDA confirmed that "FDA will not make the requested redactions" after considering whether FOIA exemptions applied and confirmed that it "will post the [] Form 483 per [its] earlier letter," *i.e.*, on May 17, 2023.

6.      Plaintiff therefore followed the procedure outlined in FDA's regulations and "institute[d] [this] suit in a United States District Court to enjoin release of the records involved," as FDA's "decision constitute[d] final agency action that is subject to judicial review."  21 C.F.R. § 20.48.

7.      In accordance with this regulation, on May 16, 2023, Plaintiff filed this action under the APA, challenging FDA's refusal to redact Plaintiff's identity as final agency action that is arbitrary, capricious, an abuse of discretion, and contrary to law within the meaning of 5 U.S.C. § 706(2)(A).

8.      Plaintiff here also challenges the issuance of two of the Form 483 observations as they are a far cry from what Congress authorized FDA to include within an FDA Form 483 namely, "any conditions or practices observed . . . which . . . indicate that any . . . drug . . . consists

in whole or in part of any filthy, putrid, or decomposed substance, or has been prepared, packed, or held under insanitary conditions whereby it may have become contaminated with filth, or whereby it may have been rendered injurious to health." 21 U.S.C. § 374(b).

9. The unwarranted and unauthorized information contained in the Form 483 not only exceeds FDA's statutory authority under 21 U.S.C. § 374(b), but disclosure of such information will cause irreparable harm to Plaintiff's professional reputation and livelihood as an attorney, as it will connect preliminary, inaccurate factual allegations to Plaintiff without due process. And it will do so with no valid benefit to the public whatsoever, as demonstrated by the fact that FDA has been able to issue a public Warning Letter related to the same inspection to Plaintiff's employer without relying on the statements in the Form 483 that reference Plaintiff's identity. (Warning Letters can follow an inspection in which a Form 483 is issued, and are the FDA's "principal means of achieving prompt voluntary compliance with the Federal Food, Drug, and Cosmetic Act." *See* Regulatory Procedures Manual § 4-1-1, U.S. Food & Drug. Admin. (July 2024), https://www.fda.gov/media/71878/download.)

10. These claims under the APA are the ***only*** way in which Plaintiff can challenge FDA's final agency action and seek to prevent disclosure of Plaintiff's identity, because only the APA waives sovereign immunity to allow for judicial review of agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

11. Accordingly, Plaintiff seeks relief from this Court, including an injunction prohibiting Defendants from publicly releasing Plaintiff's name or information allowing the identification of Plaintiff in conjunction with any release of the Form 483.

**PARTIES**

12.    Plaintiff J. Doe is a licensed, practicing attorney who works for the Company, a pharmaceutical company that develops and manufactures drugs and is regulated by FDA.

13.    Defendant FDA is an agency of HHS, and is headquartered in Silver Spring, Maryland.  FDA is responsible for, among other things, ensuring the safety, efficacy, and security of drugs, biological products, and medical devices in the United States.  21 U.S.C. § 393.  FDA is an agency as contemplated by the APA, 5 U.S.C. § 701(b)(1), and is an agency for purposes of FOIA, *see* 5 U.S.C. §§ 551(1), 552(f)(1).

14.    Defendant HHS is headquartered in Washington, D.C.  HHS is responsible for protecting the health of citizens of the United States and providing essential human services.  HHS is an agency as contemplated by the APA, 5 U.S.C. § 701(b)(1), and is an agency for purposes of FOIA, *see* 5 U.S.C. §§ 551(1), 552(f)(1).

15.    FDA has possession and control over the records that are the subject of this action and of the information for which Plaintiff seeks to prevent release.

**JURISDICTION AND VENUE**

16.    This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 and 5 U.S.C. §§ 702–06 because Plaintiff seeks judicial review of a final decision of a government agency that is arbitrary and capricious, constitutes an abuse of discretion, and is contrary to law, as well as final agency action that is in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.

17.    This Court also has jurisdiction because FDA has made a final determination to release Plaintiff's identity, pursuant to 21 C.F.R. §§ 20.47, 20.48, and this "decision constitutes final agency action that is subject to judicial review pursuant to 5 U.S.C. chapter 7," 21 C.F.R.

§ 20.48. Pursuant to this regulation, Plaintiff is "permitted . . . to institute suit in a United States District Court to enjoin release of the records involved." *Id.*

18.     This Court has personal jurisdiction over FDA and HHS pursuant to 5 U.S.C. § 552(a)(4)(B).

19.     Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

## FACTUAL ALLEGATIONS

### Drug Development and FDA's Authority to Issue Forms 483

20.     All drugs manufactured for the U.S. market are expected to satisfy the requirements of the Federal Food, Drug, and Cosmetic Act ("FDCA"). FDA monitors drugs on the market to help assure they meet FDA requirements for safety and quality, including those set forth in the FDCA and FDA's Current Good Manufacturing Practice ("cGMP") regulations. One way FDA works to evaluate and ensure that drug manufacturers comply with the FDCA and cGMP requirements is through routine and regular inspections of drug manufacturing facilities. Such surveillance inspections are conducted to monitor the manufacturing process and the quality of FDA regulated products on the market.

21.     Specifically, 21 U.S.C. § 374(a) authorizes FDA officers or employees to enter, at reasonable times, and inspect, "at reasonable times and within reasonable limits and in a reasonable manner," facilities subject to regulation under the FDCA.

22.     In order to inform owners of any conditions or practices that may indicate a "drug . . . (A) consists in whole or in part of any filthy, putrid, or decomposed substance, or (B) has been prepared, packed, or held under insanitary conditions whereby it may have become contaminated with filth, or whereby it may have been rendered injurious to health," an FDA officer or employee

"shall give to the owner, operator, or agency in charge a report in writing" through the issuance of a Form 483 which sets forth such conditions or practices.  21 U.S.C. § 374(b)(1).

23.     As explained within FDA's IOM in effect at the time of the relevant inspection, which is "the primary operational reference for FDA employees who perform field activities in support of the agency's public health mission," FDA investigators must note **only** what they "observed during the inspection."  Investigations Operations Manual at Foreword 2022, U.S. Food & Drug Admin. (2022); *id.* § 5.2.3.  As the IOM instructs, "[c]onditions listed [in an observation] should be significant and relate to an observed or potential problem with the facility, equipment, processes, controls, products, employee practices, or records."  *Id.* § 5.2.3.1.4.  The IOM also instructs that names should not be used in observations:  "[i]t is preferred not to identify individuals or firms by name"—rather, if necessary, individuals or firms should be identified "by substituting other **non-specific** identifying information."  *Id.*  (emphasis added).

24.     Nothing in 21 U.S.C. § 374, nor the IOM, authorizes FDA employees or officers to make credibility judgments during such inspections.  Notably, FDA has a separate authority to conduct broader examinations and investigations, *see* 21 U.S.C. § 372, but such authority was not invoked during the inspection at Plaintiff's employer.  Rather the Company inspection at issue here was conducted under 21 U.S.C. § 374 and resulted in the issuance of a Form 483 per 21 U.S.C. § 374(b).

### Public Disclosure of Forms 483

25.     Given the importance of the pharmaceutical industry to the U.S. healthcare system, Forms 483 are frequently and routinely requested under FOIA by interested parties such as news outlets, media companies, competitors, investors, consultants, and third-party platforms that maintain commercial databases of regulatory data, as well as by individuals.

26.     Knowing the high level of public interest in its inspection reports, FDA publishes a subset of Forms 483 on its website.  FDA makes published Forms 483 available through the Center for Drug Evaluation and Research ("CDER")[1] FOIA Electronic Reading Room and the OII FOIA Electronic Reading Room.  *See Frequently Requested or Proactively Posted Compliance Records*, CDER FOIA Electronic Reading Room, U.S. Food & Drug Admin. (Feb. 21, 2025), https://www.fda.gov/drugs/cder-foia-electronic-reading-room/frequently-requested-or-proactively-posted-compliance-records; *OII FOIA Electronic Reading Room*, U.S. Food & Drug Admin. (Feb. 19, 2025), https://www.fda.gov/about-fda/office-inspections-and-investigations/oii-foia-electronic-reading-room.  FDA also makes Forms 483 available to interested parties through FOIA requests.

27.     FDA's disclosure of records is governed by its regulations implementing FOIA, codified in Part 20 of Title 21 of the Code of Federal Regulations.  Public Information, 87 Fed. Reg. 55907-01 (Sept. 13, 2022) (21 C.F.R. Part 20 contains "FDA's regulations for the implementation of the FOIA").  As articulated in these regulations, FDA's policy on the disclosure of records is that it "will make the fullest possible disclosure of records to the public, consistent with the rights of individuals to privacy," and "all nonexempt records shall be made available for public disclosure upon request regardless of whether any justification or need for such records have been shown."  21 C.F.R. § 20.20(a), (c).

---

[1]  Under 21 C.F.R. § 20.30(a), FDA's Division of Freedom of Information is "responsible for Agency compliance with [FOIA]."  Under that umbrella, FDA's Division of Information Disclosure Policy "[p]rovides . . . clearance of all requests for information that raise issues concerning the appropriateness of the disclosure" for requests involving the CDER.  FDA Staff Manual Guides, Volume I – Organization and Functions, U.S. Food & Drug Admin. (Dec. 14, 2018), https://www.fda.gov/media/82808/download.

28.     Under these regulations implementing FOIA, FDA established "procedures for identifying records of general interest or use to the public that are appropriate for public disclosure, and for posting and indexing such records in a publicly accessible electronic format."  21 C.F.R. § 20.20(f).

29.     For those Forms 483 which FDA decides to make publicly available, it does so "either (1) proactively at [FDA's] discretion or (2) because they are 'frequently requested' per the Electronic Freedom of Information Act Amendments of 1996."  *OII FOIA Electronic Reading Room*, U.S. Food & Drug Admin. (Feb. 19, 2025), https://www.fda.gov/about-fda/office-inspections-and-investigations/oii-foia-electronic-reading-room.  As FDA instructs, such "records may be redacted to remove non-public information."  *Id.*

30.     For Forms 483 that FDA decides to publish, it may redact certain information pursuant to FDA's regulations implementing FOIA and the exemptions to FOIA.  *See, e.g.*, 21 C.F.R. § 20.64(a)(3) ("Records or information compiled for law enforcement purposes may be withheld from public disclosure . . . to the extent that disclosure . . . [c]ould reasonably be expected to constitute an unwarranted invasion of personal privacy.").  FDA regulations permit "[r]ecords or information" to be "withheld from public disclosure if a statute specifically allows [FDA] to withhold them."  21 C.F.R. § 20.67.

31.     These regulations also create a process whereby FDA must consult with an affected individual when the confidentiality of information is unclear.  Specifically, pursuant to 21 C.F.R. § 20.47, "[i]n situations where the confidentiality of data or information is uncertain and there is a request for public disclosure, [FDA] will consult with the person who has submitted or divulged the data or information or who would be affected by disclosure before determining whether or not such data or information is available for public disclosure."

32.    In addition, these regulations expressly provide for judicial review of FDA's decision to disclose.  As set forth in 21 C.F.R. § 20.48, which governs "[j]udicial review of proposed disclosure," "[w]here [FDA] consults with a person who will be affected by a proposed disclosure of data or information contained in [FDA] records pursuant to § 20.47, and rejects the person's request that part or all of the records not be made available for public disclosure, the decision constitutes final agency action that is subject to judicial review pursuant to 5 U.S.C. chapter 7."

33.    Accordingly, FDA's regulations implementing FOIA direct an individual whose request for redaction has been rejected by FDA "to institute suit in a United States District Court to enjoin release of the records involved" within five days of the "final agency action."  21 C.F.R. § 20.48.  If such a lawsuit is filed, FDA "will not disclose the records involved until the matter and all related appeals have been concluded."  *Id.*

### FOIA Exemptions

34.    While FOIA generally "provides that any person has a right . . . to obtain access to federal agency records subject to the Act," FOIA also precludes release of "any portions of such records [which] are protected from public disclosure by one of nine exemptions." Department of Justice Guide to the Freedom of Information Act, U.S. Dep't of Just., https://www.justice.gov/oip/page/file/1248371/dl?inline#page=2.

35.    FOIA Exemption 6 protects information about a person's "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Whether an invasion of privacy is "clearly unwarranted" turns on a balancing test, where a court must "balance the public interest in disclosure against the interest Congress intended the [e]xemption to protect."  *U.S. Dep't of Defense v. FLRA*, 510 U.S.

487, 495 (1994).  FOIA's relevant public interest is "to open agency action to the light of public scrutiny."  *Id.* at 496.  Such purpose "is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct."  *U.S. Dep't of Just. v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 750 (1989).

36.    Like Exemption 6, FOIA Exemption 7(C) protects against unwarranted invasions of privacy.  Exemption 7(C) allows for the protection of "records or information compiled for law enforcement purposes" where they "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  "[P]rivate citizens who may be mentioned in investigatory files, witnesses, and informants enjoy a privacy interest" under this exemption.  *Jud. Watch, Inc. v. U.S. Dep't of Com.*, 337 F. Supp. 2d 146, 181 (D.D.C. 2004).  That is because "[i]ndividual privacy interests are heightened in the context of law enforcement files," *Dillon v. U.S. Dep't of Just.*, 444 F. Supp. 3d 67, 95 (D.D.C. 2020), because the mere "mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation," *Roth v. U.S. Dep't of Just.*, 642 F.3d 1161, 1174 (D.C. Cir. 2011) (quotation marks omitted).

**Attorney Licensure and Professional Requirements**

37.    States, including the one in which Plaintiff is licensed, require attorneys to ascribe to an ethical code that includes, among others, a duty of confidentiality and truthfulness in statements to others.

38.    State professional responsibility boards can and have brought disciplinary proceedings against attorneys for failure to adhere to this code.

10

**The Form 483 Issued to the Company**

39.    In the Spring of 2022, over the course of twenty different dates, FDA inspected one of the Company's facilities.

40.    Plaintiff was not the "most responsible person" at the facility, and did not interact with FDA during the inspection.

41.    On ▮▮▮▮▮▮▮, at the conclusion of the inspection, FDA issued a Form 483 to the site lead for the Company (not Plaintiff).

42.    The Form 483 includes two factually inaccurate observations in which the FDA investigator made statements judging the actions, knowledge, and veracity of statements ascribed to Company personnel and Plaintiff, even though such "observations" were not fully investigated (nor could they be during the course of an FDA inspection conducted pursuant to 21 U.S.C. § 374, rather than 21 U.S.C. § 372).  Specifically, the challenged portions of the Form 483 contain credibility determinations and implications that Plaintiff, an attorney, in concert with outside counsel, improperly withheld information from FDA.  But the FDA investigator did not "observe" Plaintiff; indeed, the investigator never spoke to Plaintiff during the inspection.

43.    Accordingly, the Form 483 issued to the Company exceeded the scope of FDA's statutory authority under the FDCA, which authorizes FDA investigators to inspect "in a reasonable manner" and issue a Form 483 at the conclusion of an inspection "setting forth any conditions or practices observed by him." 21 U.S.C. § 374(b)(1).  In this case, rather than focusing on "insanitary conditions" and "observations," the Form 483 includes credibility judgments by the FDA investigator about statements made by various individuals at the Company—including Plaintiff—to whom the FDA investigator never spoke.

11

44.     The references at issue are not themselves Plaintiff's name but use a descriptor that readily identifies Plaintiff.  That the Form 483 uses a descriptor rather than Plaintiff's name (albeit a descriptor that does not sufficiently protect Plaintiff because it allows for Plaintiff's ready identification) indicates Defendants' awareness that identifying Plaintiff by name in circumstances such as those presented here is unwarranted and contrary to the IOM's directive.

**FDA's Consultation with Plaintiff Regarding Disclosure of the Form 483**

45.     Because Forms 483 are frequently and routinely requested under FOIA by news outlets, media companies, investors, and private citizens, FDA routinely makes Forms 483 publicly available soon after the close of the inspection.

46.     Knowing this common agency practice, at the close of the FDA inspection on ███, the Company's outside law firm immediately emailed a letter to the CDER's Division of Information Disclosure Policy requesting that FDA not publicly release the Form 483.  As the law firm stated, "Pursuant to [FOIA], 5 U.S.C. § 552(b), [the Company] requests confidential treatment of the unredacted version of the Form FDA 483" because "[t]hese documents contain confidential personal information, trade secrets, and confidential commercial or financial information that is exempt from mandatory disclosure under FOIA pursuant to 5 U.S.C § 552(b)(4) and (b)(6)."  This letter asked, in the alternative, that FDA redact the Form 483 to not disclose Plaintiff's identity or the identity of the outside law firm.  The letter also requested "notice and an opportunity to be heard on this claim of exemption" "[s]hould FDA (or any other government agency) believe that the unredacted Form FDA 483 and related documents are not exempt from FOIA disclosure."

47.     As is common in the industry, a few days following the close of the inspection, on ███, FDA received two FOIA requests for the Form 483 from a ███

██████. *See FDA FOIA Logs*, U.S. Food & Drug Admin. (Feb. 3, 2025), https://www.fda.gov/regulatory-information/freedom-information/fda-foia-logs.

48.    In its timely response to the Form 483, the Company highlighted factual inaccuracies within the Form 483 "observations" containing references to Plaintiff.

49.    On August 9, 2022, different external counsel for the Company emailed a second letter to the Director of CDER's Division of Information Disclosure Policy, requesting that the identities of Plaintiff and the Company's initial external counsel be treated as "exempt from public disclosure" under FOIA (the "August 9 Letter"). As explained in the August 9 Letter, "[t]he information related to [the Company's] external counsel's role in the investigation activities . . . is exempt pursuant to exemption (b)(4) as it is commercial information both customarily and actually treated as private by [the Company]."

50.    With respect to Plaintiff's identity, the August 9 Letter contended that the "privacy interests [of these individuals] clearly outweigh any purported public interest, particularly in light of the factual inaccuracies, and the information should be withheld accordingly pursuant to exemption (b)(6)." The August 9 Letter further explained that there is "no compelling reason for the agency to disclose" Plaintiff's identity, and there is a significant personal privacy interest in avoiding disclosure of Plaintiff's identity.

51.    On November 10, 2022, FDA emailed a response letter to the Company's external counsel, stating that "FDA has re-reviewed the Form FDA 483 to identify information exempt from disclosure under FOIA and other applicable disclosure laws and regulations." FDA also noted that it "will follow its standard practices and redact the Form FDA 483 to remove all additional information exempt from disclosure under FOIA and other applicable disclosure laws and regulations."

52.     In this letter, FDA agreed to redact the identity of the external counsel under FOIA Exemption 4, but refused to do so for Plaintiff, stating that "FDA has not been able to identify . . . the specific privacy interests that would be undermined by the release of" Plaintiff's identity under FOIA Exemption 6.  FDA also referenced, without citation, a purported "general policy" that it "does not generally redact the names or titles of high-ranking officials."  FDA concluded that if it did not receive a written response within five days, "FDA will make redactions in accordance with the FOIA and applicable regulations as described above, and the records will be disclosed."

53.     At the time FDA sent this letter on November 10, 2022, FDA had received at least six FOIA requests for the Form 483, dated ███████████████████████████████ ████████████.  *See FDA FOIA Logs*, U.S. Food & Drug Admin. (Feb. 3, 2025), https://www.fda.gov/regulatory-information/freedom-information/fda-foia-logs.

54.     Accordingly, upon information and belief, FDA was consulting with the Company and later with Plaintiff about FDA's proposed disclosure of the Form 483 pursuant to the procedure set forth in 21 C.F.R. § 20.47, whereby FDA "consult[s] with the person . . . who would be affected by disclosure before determining whether or not such data or information is available for public disclosure" only "[i]n situations where the confidentiality of data or information is uncertain and there is a request for public disclosure."

55.     On December 5, 2022, after receiving an extension of time to respond to FDA's letter, the Company's external counsel emailed a letter to the Director of CDER's Division of Information Disclosure Policy, seeking reconsideration of FDA's refusal to redact Plaintiff's identity "in light of the observations' factual inaccuracies and the negative effects of these factual inaccuracies" (the "December 5 Company Letter").  Among other things, the December 5 Company Letter explained that Plaintiff's identity "should be redacted under exemption (b)(6) to

ensure that the factual inaccuracies do not harm those involved," noting that the references to Plaintiff "erroneously link[] the individual to an allegation of non-compliance contained within 483 observations that is factually inaccurate." Thus, disclosure of Plaintiff's identity "would violate the individual's privacy interests in protecting their personal and professional reputation, as well as future employment opportunities," which is particularly harmful where, as here, the Form 483 reflects "the subjective viewpoint of an investigator," rather than "a final determination by FDA that a regulatory violation has been committed."

56.    As set forth in the December 5 Company Letter, if the Form 483 is made public without redacting reference to Plaintiff's identity, "[i]t is almost certain that the 483's factual inaccuracies would result in unjust negative reputational consequences for the individual." The December 5 Company Letter thus requested that "FDA find that the references to [Plaintiff] [are] protected from public disclosure under FOIA exemption (b)(6) and FDA's disclosure regulations, and that FDA redact such information prior to any public disclosure."

57.    Given the serious nature of the personal privacy interests at stake, including reputational harm that could impede Plaintiff's ability to continue practicing as an attorney, Plaintiff retained separate counsel.

58.    On December 5, 2022, Plaintiff's counsel emailed an additional letter to the Director of CDER's Division of Information Disclosure Policy, requesting reconsideration of FDA's refusal to redact Plaintiff's identity because disclosure "implicates a significant personal privacy interest" that could impede the "ability to engage in [Plaintiff's] chosen profession" (the "December 5 Plaintiff Letter"). As outlined in the December 5 Plaintiff Letter, "[t]his significant personal privacy interest substantially outweighs any minimal public interest in disclosure of [a person's] identity in the FDA Form 483."

59.     In the December 5 Plaintiff Letter, Plaintiff asserted that if the Form 483 "is released to the public without redaction," Plaintiff "will face unwarranted reputational harm" because "[s]uch disclosure will intrude upon [Plaintiff's] ability to maintain and carry out [Plaintiff's] profession, a harm that courts have recognized as worthy of safeguarding." *See also Bloomgarden v. U.S. Dep't of Just.*, 874 F.3d 757, 760–61 (D.C. Cir. 2017); *Dep't of the Air Force v. Rose*, 425 U.S. 352 (1976).

60.     In addition, Plaintiff explained that references to Plaintiff's identity "go well beyond what is typically seen in these forms, including for these specific observations," noting that counsel for Plaintiff "could find no other such FDA Form 483 that makes reference to a company's [Plaintiff's job title] in FDA's observations as was done in [the Company's] [] Form 483, where [Plaintiff's] title is used" and "[had] been unable to locate any publicly available Form 483 containing an observation of either category that similarly identifies specific company [employees] by name or job title."

61.     Finally, Plaintiff asserted that, "[g]iven the unusual nature of these specific FDA Form 483 observations, disclosure of [Plaintiff's] title and therefore [] identity, would be highly prejudicial and present a significant threat to . . . personal privacy interests . . . as the FDA Form 483 observations read more like conclusions in an investigation report rather than what they are—observations by field staff that are then evaluated by agency personnel in determining next steps."

62.     On May 10, 2023, FDA rejected Plaintiff's request (the "May 10 Letter"). In this letter, FDA stated that "FDA's release of information is governed by law, including FOIA and FDA disclosure regulations" and "FOIA requires federal agencies to disclose records requested by the public unless the records are exempted from release." While ***FDA admitted that Plaintiff's job title identifies Plaintiff and is "widely known,"*** FDA nevertheless concluded that "releasing

16

[Plaintiff's] title in the [] Form 483 would not constitute an unwarranted invasion of personal privacy," again referencing, without citation, a "long-standing policy of releasing the names of high-level officials in warning letters and other enforcement or inspectional documents."

63.    Notably, the Form 483 is *not* a Warning Letter, and as explained below, FDA subsequently issued a Warning Letter to Plaintiff's employer related to the observations noted in the Form 483 without referencing Plaintiff by name or by title, and without referencing one of the challenged observations at all.

64.    In the May 10 Letter, FDA cited no legal support for its position and did not address Plaintiff's arguments raised in the December 5 Plaintiff Letter related to their professional harm. FDA also did not respond to the assertion that the factually inaccurate statements are not in line with the purpose and statutory underpinnings of an FDA Form 483 issued under 21 U.S.C. § 374(b)(1), *i.e.*, that FDA overreached its statutory authority.

65.    Rather, in the May 10 Letter, FDA summarily concluded that it was "difficult to discern any reputational harm that [Plaintiff] would suffer as a result of the mere inclusion of [Plaintiff's] title in the FDA Form 483 issued to [the Company] and released under FOIA." FDA concluded that it "will follow its standard practices and redact the Form FDA 483 to remove all additional information exempt from disclosure under FOIA and other applicable disclosure laws and regulations," and informed Plaintiff's counsel that it intended to post the Form 483 without redaction to FDA's website five business days after counsel's receipt of such notice, *i.e.*, on May 17, 2023.

66.    In the May 10 Letter, FDA further noted that the "Form 483 was issued to [the Company], not [Plaintiff] in [Plaintiff's] personal capacity." This is precisely why a premature public posting of such observations in an unredacted fashion will unfairly curtail Plaintiff's due

17

process rights. There will be a time and a place for FDA to resolve such disputes by the Company and Plaintiff; all Plaintiff asks is that the agency allow that process to take place before jumping the gun and publicly disclosing Plaintiff's identity in factually inaccurate and legally inappropriate observations. The "observations" contained within the Form 483 go far beyond what is authorized by the FDCA and are contrary to law.

67.     After receiving the May 10 Letter from FDA, on May 11, 2023, Plaintiff's counsel sent a further letter urging FDA to reconsider its position. In this letter, Plaintiff explained that "disclosure of [Plaintiff's] identity . . . is not in line with the purpose and statutory underpinnings of an FDA Form 483," which is "issued to 'give to the owner, operator, or agent in charge a report in writing setting forth any conditions or practices observed by [FDA]'" that are not in accordance with the FDCA. As Plaintiff noted, they "could find no other such FDA Form 483 that includes an observation relating to a company's [job title]" and they "have been unable to locate any publicly available Form 483 containing an observation of either category that similarly identifies company [employees] by name or job title." Plaintiff also noted FDA's reference to a "long-standing policy of releasing the names of high-level officials in warning letters and other enforcement or inspectional documents," and explained that FDA "did not cite to any specific policy, and did not specifically reference a policy for revealing a person's identity in an FDA Form 483 observation, which is not the same as a Warning Letter or enforcement action."

68.     On May 15, 2023, FDA denied Plaintiff's second request and stated that it "considered both FOIA Exemptions 6 and 7(C) in reaching its conclusion." In this letter, FDA confirmed that the agency intends to post the Form 483 "per [its] earlier letter," *i.e.*, on May 17, 2023. FDA's determination that it "will not make the requested redactions and will post the []

18

Form 483" was a "final agency action that is subject to judicial review" pursuant to 21 C.F.R. § 20.48.

69.     At the time that FDA issued its final agency action on May 15, 2023 denying Plaintiff's requests for redactions, FDA had received at least ███ FOIA requests for the Form 483, dated ████████████████████████████████████████████. *See FDA FOIA Logs*, U.S. Food & Drug Admin. (Feb. 3, 2025), https://www.fda.gov/regulatory-information/freedom-information/fda-foia-logs. Currently, there are at least ████ pending FOIA requests for the Form 483, dated █████████████████████████████████ ██████████████████████. *See FDA FOIA Logs*, U.S. Food & Drug Admin. (Feb. 3, 2025), https://www.fda.gov/regulatory-information/freedom-information/fda-foia-logs.

**FDA's Regulations Direct Plaintiff to File This Lawsuit
to Seek Judicial Review of FDA's Decision**

70.     FDA's denial of Plaintiff's request to redact Plaintiff's identity on May 15, 2023 was a "reject[ion] [of Plaintiff's] request that part . . . of the records not be made available for public disclosure." 21 C.F.R. § 20.48. FDA's decision constitutes "final agency action that is subject to judicial review" pursuant to FDA's regulations implementing FOIA. *Id.*

71.     As a "person who will be affected by a proposed disclosure of data or information" contained in FDA's records, Plaintiff's recourse to challenge FDA's decision was "to institute suit in a United States District Court to enjoin release of the records involved" within five days of FDA's decision. *Id.*

72.     Therefore, as directed by FDA's disclosure regulations, on May 16, 2023, Plaintiff filed the original complaint in this action, challenging FDA's action under the APA as arbitrary and capricious and seeking to enjoin the public release of the Form 483 without redaction of Plaintiff's identity based on the inappropriate nature of the observations that reference Plaintiff

19

within the Form 483 and the harm to Plaintiff that would result from the release of the unredacted Form 483.

73.    Specifically, FDA's decision to release Plaintiff's identity, which, upon information and belief, will be disclosed to the public when the Form 483 and any documents citing the Form 483 are made available to the public after this matter and all related appeals have been concluded, is arbitrary, capricious, an abuse of discretion, and contrary to law.

74.    Plaintiff will suffer irreparable harm if FDA discloses the unique information in the Form 483 disclosing Plaintiff's identity because Plaintiff will be judged as untruthful based on the FDA investigator's improper and unauthorized "observations."  Having the public associate Plaintiff with the allegations made in the Form 483 observations—which, notably, are inaccurate, unauthorized by the FDCA, and represent an end-run around legally required processes—will result in serious reputational harm to Plaintiff and harm to Plaintiff's professional livelihood. Given Plaintiff is a practicing, licensed attorney, which is a profession ruled by a canon of ethics and state-specific professional licensure requirements, the potential for harm is particularly acute here.  Indeed, an attorney faces professional and reputational harm from being associated with allegations of misconduct.

**FDA's Subsequent Warning Letter Based on the Form 483**

75.    Following inspections and Forms 483, FDA can issue a Warning Letter to notify a company that FDA "considers one or more products, practices, processes or other activities to be in violation of the [FDCA], its implementing regulations and other federal statutes."  Exhibit 4-1, Regulatory Procedures Manual § 4-4.  As explained within FDA's Regulatory Procedures Manual, a Warning Letter is one of FDA's "principal means of achieving prompt voluntary compliance with the [FDCA]."  *Id.* § 4-1-1.  Warning Letters were "developed to correct violations of the

20

statutes or regulations" and are "issued only for violations of regulatory significance," which are "those violations that may lead to enforcement action if not promptly and adequately corrected." *Id.*

76.    Unlike a Form 483, which is the start of the regulatory process whereby FDA observes objectionable conditions or practices, a Warning Letter "communicates the agency's position on a matter," *i.e.*, that FDA "considers one or more products, practices, processes or other activities to be in violation of the FDCA." *Id.*

77.    On ████████, while this lawsuit was pending, FDA sent the Company a Warning Letter based on the Form 483, without referencing Plaintiff's identity (either by name or by job title), demonstrating that there was no governmental need or legitimate governmental interest in referencing Plaintiff in the Form 483. Indeed, the Warning Letter omitted entirely the factually inaccurate observation included within the Form 483 that improperly made credibility determinations about Plaintiff and thus exceeded the scope of FDA's authority under 21 U.S.C. § 374.

## COUNT I

**(Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A))**

**FDA's Decision to Disclose Personally-Identifying Information About Plaintiff Was Arbitrary, Capricious, an Abuse of Discretion, and Otherwise Not in Accordance with Law**

78.    Plaintiff re-alleges and reincorporates each of the proceeding paragraphs of this First Amended Complaint as if set forth fully herein.

79.    FDA's decision is a "final agency action for which there is no other adequate remedy in a court" and thus is "subject to judicial review" under 5 U.S.C. § 704, because it marked the consummation of the agency's decision-making process with the agency's repeated assertions of the certainty that Plaintiff had not satisfied the requisite criteria. Pursuant to 21 C.F.R. § 20.48,

FDA's decision "constitutes final agency action that is subject to judicial review pursuant to 5 U.S.C. chapter 7" because FDA "reject[ed] [Plaintiff's] request that part or all of the records not be made available for public disclosure."  Accordingly, Plaintiff is permitted to "institute suit in a United States District Court to enjoin release of the records involved" and seek judicial review of FDA's decision under 21 C.F.R. § 20.48.  Due to the limited waiver of sovereign immunity, Plaintiff may bring a claim only under the APA, in order to seek review of FDA's decision.

80.    A court must "hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

81.    FDA's refusal to redact Plaintiff's identity from the Form 483, as explained in its letters dated May 10 and 15, 2023, is arbitrary and capricious, an abuse of discretion, and contrary to law.

82.    FOIA authorizes agencies to disclose information only under certain circumstances and upon a request for records.  5 U.S.C. § 552(a).  FOIA Exemption 6 exempts from disclosure an individual's "personnel and medical files and similar files[,] the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." *Id.* § 552(b)(6).  Similarly, FOIA Exemption 7(C) protects from disclosure "records or information compiled for law enforcement purposes," to the extent that these records or information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7)(C).

83.    References to Plaintiff's identity in the Form 483, in connection with factually inaccurate and legally inappropriate observations, will intrude upon Plaintiff's ability to maintain and carry out a profession and therefore constitute an unwarranted invasion of personal privacy. Accordingly, references to Plaintiff's identity in the Form 483 are exempt from disclosure under

FOIA, 5 U.S.C. § 552(b), and failure to withhold this information as requested by Plaintiff is arbitrary and capricious, an abuse of discretion, and contrary to law.

84.     FDA's disclosure of Plaintiff's identity also is arbitrary and capricious, an abuse of discretion, and contrary to law because such action is contrary to FOIA, FDA's regulations implementing FOIA, and FDA's policy, practice, and precedent, including the IOM's directive, and because FDA failed to articulate a satisfactory explanation for its actions.

85.     FDA's disclosure of Plaintiff's identity also is arbitrary and capricious, an abuse of discretion, and contrary to law because the observations in the Form 483 which disclose Plaintiff's identity exceed the scope of FDA's authority under 21 U.S.C. § 374(b).

86.     Disclosure of Plaintiff's identity in the Form 483 is immaterial to the observations in the Form 483 and therefore serves no government or public interest purpose.

87.     Accordingly, this Court should hold unlawful and set aside FDA's decision to disclose Plaintiff's identity in the Form 483 as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

## COUNT II

**(Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(C))**

**FDA's Issuance of the Form 483 Observations Exceeds FDA's Statutory Authority**

88.     Plaintiff re-alleges and reincorporates each of the proceeding paragraphs of this First Amended Complaint as if set forth fully herein.

89.     FDA's decision to disclose the Form 483 with unauthorized observations is a "final agency action for which there is no other adequate remedy in a court," and therefore is "subject to judicial review" under 5 U.S.C. § 704, because it marked the consummation of the agency's decision-making process with respect to the disclosure of the Form 483.

90.     A court must "hold unlawful and set aside agency action . . . found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706(2)(C).

91.     The references to Plaintiff in the challenged observations included in the Form 483 issued by FDA to the Company are not in line with the statutory limits in, and exceeded the scope of FDA's statutory authority under, 21 U.S.C. § 374(b).  Pursuant to 21 U.S.C. § 374(b), FDA investigators are permitted only to inspect "in a reasonable manner" and issue a Form 483 at the conclusion of an inspection "setting forth any conditions or practices observed by him which, in his judgment, indicate that any food, drug, device, tobacco product, or cosmetic in such establishment (A) consists in whole or in part of any filthy, putrid, or decomposed substance, or (B) has been prepared, packed, or held under insanitary conditions whereby it may have become contaminated with filth, or whereby it may have been rendered injurious to health."  FDA exceeded this authority by including in the Form 483 credibility judgments by the FDA investigator about statements made by various individuals at the Company—including Plaintiff—to whom the FDA investigator never spoke.

92.     Accordingly, this Court should hold unlawful FDA's decision to disclose the observations in the Form 483 that reference Plaintiff as improper observations "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706(2)(C).

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for relief as follows:

a.     A declaration of law that Plaintiff has a personal privacy interest that requires withholding certain information that would disclose Plaintiff's identity from public disclosure in the Form 483 under FOIA, pursuant to 5 U.S.C. § 552(b)(6);

24

b.      A declaration of law that the observations in the Form 483 exceeded the scope of FDA's statutory authority under 21 U.S.C. § 374(b);

c.      Preliminary injunctive relief prohibiting HHS and FDA, as an agency of HHS, from publicly disclosing, on the agencies' websites or otherwise, Plaintiff's identity, including the specific information that would reveal Plaintiff's identity that Plaintiff seeks to redact, in the Form 483 and any documents citing or referencing the Form 483 or the two Form 483 observations referring to Plaintiff, while this action is pending, pursuant to 21 C.F.R. § 20.48;

d.      Permanent injunctive relief prohibiting HHS and FDA from publicly disclosing, on the agencies' websites or otherwise, Plaintiff's identity, including the specific information that would reveal Plaintiff's identity that Plaintiff seeks to redact, in the Form 483 and any documents citing or referencing the Form 483 or the observations described therein;

e.      A judgment in Plaintiff's favor;

f.      An award of attorneys' fees and costs to Plaintiff; and

g.      Such further relief as the Court finds just and proper.

Dated:  February 28, 2025                          Respectfully submitted,

By: _/s/ Sonia W. Nath_____
    Sonia W. Nath (DC Bar No. 977095)
    David E. Mills (DC Bar No. 401979)
    COOLEY LLP
    1299 Pennsylvania Ave., NW, Suite 700
    Washington, DC  20004-2400
    Telephone: (202) 776-2120
    Facsimile: (202) 842-7899
    snath@cooley.com
    dmills@cooley.com

    Kathleen R. Hartnett (D.C. Bar No. 483250)
    COOLEY LLP
    3 Embarcadero Center, 20th Floor
    San Francisco, CA 94111-4004
    Telephone: (415) 693-2000
    Facsimile: (415) 693-2222
    khartnett@cooley.com

25

Victoria R. Pasculli (admitted *pro hac vice*)
COOLEY LLP
55 Hudson Yards
New York, NY  10001-2157
Telephone: (212) 479-6879
Facsimile: (212) 479-6275
vpasculli@cooley.com

*Counsel for Plaintiff J. Doe*

26